Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Patricia A. Knapp, appellant, v. Kevin Ruser,
in his official capacity, and the University
of Nebraska Board of Regents, appellees.

___ N.W.2d ___

Filed September 1, 2017.    No. S-16-785.

1.  **Summary Judgment: Appeal and Error.** An appellate court will
    affirm a lower court's grant of summary judgment if the pleadings and
    admitted evidence show that there is no genuine issue as to any material
    facts or as to the ultimate inferences that may be drawn from those facts
    and that the moving party is entitled to judgment as a matter of law.
2.  ____: ____. In reviewing a summary judgment, an appellate court views
    the evidence in the light most favorable to the party against whom the
    judgment was granted and gives that party the benefit of all reasonable
    inferences deducible from the evidence.
3.  **Motions for New Trial: Appeal and Error.** An appellate court reviews
    a denial of a motion for new trial or, in the alternative, to alter or amend
    the judgment, for an abuse of discretion.
4.  **Fair Employment Practices: Statutes: Federal Acts.** The Nebraska
    Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 through
    48-1126 (Reissue 2010), is patterned after federal title VII of the Civil
    Rights Act of 1964, 42 U.S.C. § 2000e (2012), and therefore, it is appro-
    priate to look to federal court decisions construing Title VII for guidance
    with respect to the Nebraska act.
5.  **Fair Employment Practices: Discrimination: Proof.** A prima facie
    case of gender discrimination requires the plaintiff to prove that he or
    she (1) is a member of a protected class, (2) was qualified to perform
    the job, (3) suffered an adverse employment action, and (4) was treated
    differently from similarly situated persons of the opposite sex.
6.  ____: ____: ____. The test to determine whether employees are simi-
    larly situated to warrant a comparison to a plaintiff is a rigorous one and
    the plaintiff has the burden of demonstrating that there were individuals
    similarly situated in all relevant aspects to the plaintiff by a preponder-
    ance of the evidence.

7. **Fair Employment Practices: Statutes: Federal Acts.** Because Neb. Rev. Stat. § 48-1221(1) (Reissue 2010) is patterned after the federal Equal Pay Act, 29 U.S.C. § 206(d) (2012), it is appropriate to look to federal court decisions construing 29 U.S.C. § 206(d) for guidance with respect to § 48-1221(1).

8. **Claims: Fair Employment Practices: Discrimination: Wages: Proof.** When bringing a claim of wage discrimination based on sex under Neb. Rev. Stat. § 48-1221(1) (Reissue 2010), a plaintiff must first establish a prima facie case by showing by a preponderance of the evidence that (1) the plaintiff was paid less than a person of the opposite sex employed in the same establishment; (2) for equal work on jobs requiring equal skill, effort, and responsibility; (3) which were performed under similar working conditions. If a plaintiff establishes a prima facie case of wage discrimination based on sex, the burden then shifts to the defendant to prove one of the affirmative defenses set forth in § 48-1221(1).

9. **Fair Employment Practices: Proof.** A plaintiff must establish a prima facie case of retaliation under Neb. Rev. Stat. § 48-1114 (Reissue 2010) by showing (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action.

10. \_\_\_\_: \_\_\_\_. To satisfy the adverse employment action requirement in a retaliation claim, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse. This, in turn, requires a showing that the employment action might have dissuaded a reasonable worker from reporting the alleged unlawful practice. To meet this burden, a plaintiff must demonstrate that the employment action was material, not trivial, and that it resulted in some concrete injury or harm.

11. **Claims: Fair Employment Practices: Public Policy: Damages.** Under the public policy exception to the at-will employment doctrine, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. The public policy exception is restricted to cases when a clear mandate of public policy has been violated, and it should be limited to manageable and clear standards. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.

Appeal from the District Court for Lancaster County: Horacio J. Wheelock, Judge. Affirmed.

Brandon B. Hanson, of Hanson Law Offices, for appellant.

John C. Wiltse, of University of Nebraska, and David R. Buntain, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Patricia A. Knapp filed an action against Kevin Ruser, in his official capacity, and the Board of Regents of the University of Nebraska in which she asserted claims of discriminatory wage and employment practices based on her sex as well as claims of employment retaliation. Knapp's claims arose from alleged occurrences while she was a supervising attorney for the civil clinical law program at the University of Nebraska College of Law. Knapp appeals the orders of the district court for Lancaster County in which the court sustained the defendants' motion for summary judgment and overruled her motion to alter or amend the judgment. We affirm the district court's orders.

## II. STATEMENT OF FACTS

Knapp commenced this action with a complaint filed in the district court on July 11, 2014. In that complaint, Knapp set forth eight claims for relief, some based on state law and some based on federal law. In August, the defendants had the action removed to the U.S. District Court for the District of Nebraska. In November 2015, the federal court sustained the defendants' motion for summary judgment in part and dismissed certain of Knapp's claims, which were based on federal law, with prejudice. The federal court remanded the remaining claims, which were based on Nebraska state law, to the district court for Lancaster County for further proceedings. *Knapp v. Ruser*, 145 F. Supp. 3d 846 (D. Neb. 2015). Upon remand to the state court, Knapp filed an amended

complaint which mirrored the operative amended complaint she had filed in the federal court. In the amended complaint, she set forth 10 claims for relief. The federal court had dismissed the first through third, sixth, eighth, and tenth claims. Also, it remanded the fourth, fifth, seventh, and ninth claims for further proceedings in the state court. Accordingly, our consideration on appeal is limited to the state district court's disposition of four claims identified in the operative complaint as the fourth, fifth, seventh, and ninth claims.

## 1. Background/Facts

Knapp, an attorney, began working in the civil clinic as a temporary half-time employee in the summer of 1999. At that time, the director of clinical programs was on a sabbatical, and Knapp was hired to cover the portion of his responsibilities that concerned the civil clinic. After the director returned from sabbatical and informed the college that he would be leaving at the end of the fall semester, Knapp was hired as a temporary half-time employee beginning in the spring 2000 semester. The understanding was that she would cover the former director's duties with respect to the civil clinic while the law school considered its long-term strategic plan for the clinical programs.

Knapp's half-time employment in the civil clinic ended in August 2004 after Ruser was named director of the clinical programs and the law school hired Richard Moberly to perform the duties Knapp had performed in the civil clinic. In 2006, the law school again hired Knapp as a half-time employee in the civil clinic after it determined that Moberly's half-time status was not sufficient to meet student needs. While Knapp and Moberly split duties in the civil clinic, Moberly held a full-time position which included additional responsibilities such as teaching doctrinal classes, research, and community service.

Knapp continued to work half-time in the civil clinic until August 2011, when Moberly became an associate dean of the law school and gave up his duties in the civil clinic. Knapp

and Ruser agreed that Knapp's employment as supervising attorney in the civil clinic should go to full time. Knapp's position was classified as that of "Temporary Lecturer" and was designated as a "'Special Appointment.'" Knapp met with the dean of the law school to discuss her full-time salary; the dean offered Knapp an annual salary of $80,000. After Knapp told the dean that the salary was low, the dean told Knapp that she would explore the possibility of increasing the salary by seeking a designation for the position as a "'professor of practice.'" Knapp agreed to accept the salary for the upcoming academic year based on what she believed to be the dean's "good-faith commitment" to find a way to increase her salary. When Knapp told Ruser the salary she had been offered, Ruser told her that the dean had "'lowballed'" her.

A year later, in August 2012, Ruser left a letter for Knapp setting forth proposed terms and conditions for her employment in the upcoming academic year. The letter stated that her salary would again be $80,000. Prior to receiving the letter, Knapp had had no other communication with the law school's administration regarding her salary for the upcoming year. The letter prompted Knapp to check the salaries of others working in the clinical programs. She learned from the University of Nebraska's website that a male professor had been hired in March 2012 to teach a business transactions clinic at a salary of $106,000 per year. Knapp thereafter spoke with Ruser regarding her salary, and she told him that after seeing others' salaries, she thought that the salary structure in the clinical programs was "skewed" and that the clinics had a "'gender equity' problem" that Ruser needed to address. Ruser responded that he was "'baffled'" by Knapp's allegations of discrimination and that the new male professor's higher salary was justified by the fact that his position was a tenure track position.

Knapp alleged that the conversation became heated and that afterward, Ruser's behavior and demeanor toward her changed. Knapp alleged that Ruser acted more hostile and

that he stopped adequately communicating with her. Knapp also observed that Ruser appeared to be neglecting his own duties in the clinic, including supervision of students and cases. After adopting a child in the spring semester, Ruser went to half time, and Knapp alleged that he "disengaged even further" from the clinic, with the result being that the clinic "was not fulfilling its ethical obligations to its clients or to its students."

In April 2013, Knapp learned that Ruser would be receiving a lifetime achievement award from the law school. Although other members of the clinic's staff had known of the award for several weeks and had been invited to sit at Ruser's table at the award ceremony, Ruser had not mentioned the award to Knapp. This incident prompted Knapp to conclude that her relationship with Ruser "was so badly damaged that it had become impossible for them to work together as law partners in a way that would meet their ethical obligations to their clients and to their students."

Knapp decided to leave her job at the clinic, but a coworker encouraged her to speak with the dean about what was happening in the clinic. Knapp met with the dean and informed her of several problems that she perceived in the clinic. Knapp told the dean that problems had existed for women in the clinical program since the early 1980's, when Knapp was a student at the college. Knapp informed the dean of various concerns she had regarding Ruser's management of the clinical programs, focusing on "the environment created for women in the clinical programs over the years" by Ruser and his male associates. Knapp alleged that after listening to Knapp's concerns, the dean "did not offer to help in any way but wished [Knapp] well." Knapp's employment in the clinic ended on May 31, 2013.

## 2. FEDERAL DISTRICT COURT'S
### DISPOSITION OF CLAIMS

The federal district court concluded that because of sovereign immunity, it lacked jurisdiction to hear four of Knapp's

claims: the fourth, fifth, seventh, and ninth. Those four claims were based on state law, and the federal court found that the state statutory schemes underlying the claims were not "sufficiently explicit to effect a waiver of sovereign immunity to suit in federal court." *Knapp v. Ruser*, 145 F. Supp. 3d 846, 855 (D. Neb. 2015). The federal court therefore remanded the four claims for further proceedings in the state district court.

The federal court determined that the six remaining claims—the first through third, sixth, eighth, and tenth—were asserted under federal law and that Congress had abrogated states' sovereign immunity for those claims. The court stated that five of the claims arose under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2012) (Title VII), and that the remaining claim arose under the Equal Pay Act, 29 U.S.C. § 206(d) (2012) (EPA). The federal district court considered the six claims. It found merit to the defendants' motion for summary judgment and dismissed the six claims.

The federal court stated that Knapp's first claim was fashioned as a claim of disparate impact under Title VII. The court determined that Knapp's disparate impact claim failed because she had not alleged any facially neutral employment policy that had a disparate impact on a protected class and instead had alleged a practice that was not facially neutral. The court characterized Knapp's allegations as an allegation of disparate treatment rather than disparate impact and concluded that Knapp had not pled a prima facie case for disparate impact. The court therefore dismissed Knapp's first claim.

The federal court next considered Knapp's second, sixth, and eighth claims, which were fashioned as claims of disparate treatment and discrimination (the second and eighth claims, respectively) under Title VII and a claim of wage discrimination under the EPA (the sixth claim). The court set forth the requirements of a prima facie claim of disparate treatment or discrimination under Title VII and stated that a prima facie claim of wage discrimination under the EPA was sufficiently similar to examine the claims together. The court stated that in order to prevail on each of these claims, Knapp

needed to identify similarly situated males who were treated differently from her. Construing the facts in a light most favorable to Knapp, the court determined that her claims failed because "she [had] not shown any similarly situated male comparators who were treated differently." *Knapp*, 145 F. Supp. 3d at 858. The court stated that by Knapp's own admission, the males to whom she compared herself performed work or held duties that differed substantially from her own. Such duties included directing clinical programs, undertaking academic research, and performing community service, none of which were part of Knapp's position, which focused solely on teaching.

The federal court stated that although Knapp argued her Title VII claims as failure to promote and wage discrimination, the evidence she presented was more consistent with a failure to hire. The court noted that Knapp compared her nontenured position to tenured positions held by male employees, and the court stated that "the uncontroverted evidence [was] that Knapp could only become eligible for tenure if she were hired into a tenure-eligible position." *Knapp v. Ruser,* 145 F. Supp. 3d 846, 857 (D. Neb. 2015). The court considered Knapp's claims as failure-to-hire claims but determined that the claims still failed under such characterization. The court stated Knapp did not allege that she had applied for any tenure-eligible position or that anyone represented that her position would be eligible for tenure, and it stated that instead the uncontroverted evidence was that Knapp and the college mutually understood that her position was not eligible for tenure.

The federal court determined that "[t]he uncontroverted evidence . . . demonstrates that Knapp held a position with substantially different duties from her male colleagues" and that "she never applied for a position similar to those they held." *Id*. at 859. The court concluded that Knapp "failed to allege facts sufficient for a reasonable jury to find that she suffered less favorable treatment than the Defendants gave to similarly situated individuals outside of her protected class."

*Id.* The court therefore dismissed Knapp's second, sixth, and eighth claims.

Knapp's third claim was fashioned as a constructive discharge claim under Title VII. The federal court rejected the claim for two reasons. First, the court determined that Knapp had not alleged facts sufficient for a jury to conclude that a reasonable person would have found the conditions of employment intolerable. The court noted that Ruser's less frequent communication with Knapp, his personal slights against her, and his alleged disengagement from his own duties were not enough to create a cognizable constructive discharge claim. Second, the court determined that although Knapp had aired certain grievances with the dean, she did not give the law school an opportunity to correct the problems before she resigned, and that her complaints were focused on long-term problems in the clinic rather than her immediate problems with Ruser. The court dismissed Knapp's third claim.

For similar reasons, the court rejected Knapp's tenth claim, which it characterized as an employment retaliation claim under Title VII. The court determined that "a reasonable jury could not conclude that Ruser's alleged conduct constituted an adverse employment action." *Knapp*, 145 F. Supp. 3d at 861. The court stated that "Knapp acknowledge[d] that her strained relationship with Ruser did not interfere with her ability to perform her duties" and that the evidence did not support her "assertion that Ruser's alleged neglect of his own cases somehow affected her duties." *Id.* at 862. The court dismissed Knapp's tenth claim.

### 3. STATE COURT'S DISPOSITION OF REMANDED CLAIMS

Having dismissed the six claims that were based on federal law, the federal district court remanded Knapp's fourth, fifth, seventh, and ninth claims, which were based on state law, to the state district court for further proceedings. On remand, the defendants moved for summary judgment on those claims. The state district court applied the familiar framework found in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and after a hearing determined that Knapp's evidence failed to show a prima facie case of discrimination. The state district court sustained the defendants' motion for summary judgment.

In its order ruling on the defendants' motion for summary judgment, the district court began its analysis by noting that three of the four remanded claims arose under Nebraska statutes that were patterned on analogous federal laws. The court stated that in Knapp's fourth claim, she asserted a discriminatory wage practice claim under Neb. Rev. Stat. §§ 48-1219 through 48-1227.01 (Reissue 2010), which statutes the court characterized as the state equivalent of the federal EPA. The court stated that in her fifth and seventh claims, Knapp alleged violations of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 through 48-1126 (Reissue 2010 & Cum. Supp. 2014) (NFEPA), which the court characterized as the state equivalent of federal Title VII. The court noted that this court has held that Nebraska antidiscrimination laws are to be interpreted in the same manner as their federal counterparts. The court cited Nebraska appellate court cases looking to federal decisions construing Title VII for guidance to interpret the NFEPA. Extrapolating from the reasoning of those cases, the district court concluded it should apply a similar approach and looked to federal decisions construing the EPA for guidance regarding §§ 48-1219 through 48-1227.01.

The court first considered Knapp's fourth claim, regarding discriminatory wage practices, under §§ 48-1219 through 48-1227.01. Using a rationale similar to that used by the federal court when it rejected Knapp's sixth claim, for wage discrimination under the EPA, the court rejected this claim. The court indicated that the claim was specifically based on § 48-1221(1). The court determined that Knapp had failed to show any male employees who performed comparable work and that therefore, she could not establish a prima facie case of wage discrimination under § 48-1221(1). The court stated that the male professor who was hired in March 2012 had

duties that Knapp did not have, mainly related to the task of creating a new entrepreneurship clinic. This task required him to attend meetings with faculty and the dean and to perform community outreach and academic research, as well as performing administrative tasks involved in establishing the new clinic. The court determined that three other men to whom Knapp compared herself were members of the college faculty who had administrative and other duties that Knapp did not have as a temporary member of the nontenured staff of the college. As a temporary lecturer, Knapp was assigned exclusively to teach students and did not have responsibilities to conduct academic research or perform community service. The court also noted that Knapp had never applied for a position offering the possibility of tenure. The court granted summary judgment in favor of the defendants on Knapp's fourth claim because she had not presented sufficient evidence of comparable individuals to make a prima facie inference of discriminatory wages under § 48-1221(1).

The court next considered Knapp's fifth claim, which it characterized as a claim of discrimination on the basis of sex under the NFEPA. The court determined that Knapp's discrimination claim under the NFEPA failed for the same reason that her eighth claim, for discrimination under Title VII, had failed in the federal district court. The court noted that the NFEPA mirrors Title VII and that in order to establish a prima facie case for sex discrimination, a plaintiff needed to show, inter alia, that similarly situated males were treated differently. The court determined that Knapp had failed to identify any similarly situated males who were treated differently from her and that therefore, she had failed to show a prima facie case of discrimination under the NFEPA. The court also addressed Knapp's argument that the defendants failed to hire her for better-paying positions with the opportunity for tenure. The court agreed with the federal district court's analysis to the effect that this argument failed because Knapp had not presented any evidence that she had applied for any tenure-eligible positions. The court therefore granted summary

judgment in favor of the defendants on Knapp's fifth claim, of discrimination under the NFEPA.

The court characterized Knapp's seventh claim as a claim of employment retaliation under the NFEPA. Knapp argued that Ruser had created a hostile work environment and had unreasonably interfered with her work performance after she complained to him regarding sex discrimination in the clinic. The court rejected Knapp's retaliation claim under the NFEPA based on reasoning similar to that of the federal district court when it rejected Knapp's tenth claim, of employment retaliation under Title VII. The court determined that Knapp had failed to show that a reasonable person would have found the conditions of employment intolerable or that the defendants either intended to force her to resign or could have reasonably foreseen that she would do so as a result of their actions. The court therefore granted summary judgment in favor of the defendants on Knapp's seventh claim, of employment retaliation under the NFEPA.

Finally, the court characterized Knapp's ninth claim as a public-policy-based claim of retaliation. Knapp alleged that the defendants had retaliated against her "for attempting to prevent ethical issues in a learning setting for future lawyers . . . in contravention of public policy." Knapp argued that the civil clinic was a de facto law firm and that it was therefore subject to duties required of law firms in Nebraska. The district court cited *Trosper v. Bag 'N Save*, 273 Neb. 855, 734 N.W.2d 704 (2007), and stated that this court has recognized a public policy exception to the at-will employment doctrine and that under the public policy exception, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. The court rejected Knapp's public policy retaliation claim for much the same reasons it rejected her claim of employment retaliation under the NFEPA. The court determined that Knapp had "failed to show how Ruser's absence or refusal to communicate following their heated conversation resulted in her discharge or demotion." The court noted that certain of Knapp's concerns

regarding Ruser's management of the clinical programs "were longstanding" and that she did not express those concerns to anyone in the college prior to April 2013. The court further determined that "even after Ruser became withdrawn, [Knapp] was able to fulfill her ethical obligations and performance" in the clinic, and that there was "no evidence that Ruser's work on his own cases could compel a reasonable person in [Knapp's] position to resign." The court granted summary judgment in favor of the defendants on Knapp's ninth claim, of public policy retaliation.

The district court concluded its order by stating that Knapp had "failed to establish a prima facie case of wage discrimination, failure to promote because of sex, retaliation, and retaliation in violation of public policy." The court therefore sustained the defendants' motion for summary judgment with respect to Knapp's fourth, fifth, seventh, and ninth claims. The court overruled Knapp's subsequent motion to alter or amend its judgment.

Knapp appeals the district court's orders sustaining the defendants' motion for summary judgment and overruling her motion to alter or amend its judgment.

## III. ASSIGNMENTS OF ERROR

Knapp generally claims that the district court erred when it sustained the defendants' motion for summary judgment on her fourth, fifth, seventh, and ninth claims and when it overruled her motion to alter or amend the judgment.

Knapp specifically claims, restated, that the district court erred when it (1) analyzed her fifth claim as a claim of failure to hire but failed to analyze it as a claim of impermissible classification under the NFEPA; (2) determined, with regard to her fifth claim, that she failed to show that there were similarly situated male employees who were treated differently; (3) determined, with regard to her fourth claim, regarding wage discrimination under § 48-1221(1), that she failed to show that there were male employees who performed comparable duties; and (4) determined that she failed, with

regard to both her seventh claim, of employment retaliation under the NFEPA, and her ninth claim, of public-policy-based retaliation, to show retaliatory or unreasonable conduct by Ruser.

We note that Knapp also claims that the federal district court erred when it sustained the defendants' motion for summary judgment with respect to her first through third, sixth, eighth and tenth claims. She requests that we reverse the federal district court's order sustaining the defendants' motion for summary judgment on those claims. Under federal law, when a federal district court grants summary judgment on certain claims and remands the remaining claims to a state court, the federal district court's partial summary judgment becomes final as to the claims on which the federal district court granted summary judgment and the federal district court's resolution of those claims is appealable to the federal circuit court. See *Porter v. Williams*, 436 F.3d 917 (8th Cir. 2006). The federal district court's order in *Knapp v. Ruser*, 145 F. Supp. 3d 846 (D. Neb. 2015), as a final judgment as to those claims upon which the federal court granted summary judgment, is appealable to a federal circuit court, and we do not review the federal district court's resolution of those claims.

## IV. STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[3] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for

an abuse of discretion. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

## V. ANALYSIS

Knapp generally claims that the district court erred when it sustained the defendants' motion for summary judgment on her fourth, fifth, seventh, and ninth claims generally for the reason that Knapp's evidence failed to show a prima facie case of discrimination, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and when it overruled her motion to alter or amend the judgment. She also assigns specific errors, each of which relates to one or more of the claims. We will review the district court's ruling as to each claim and Knapp's specific arguments as to each claim in turn.

### 1. Fifth Claim: Discrimination Under the NFEPA

Knapp's fifth claim was based on the NFEPA. The district court analyzed Knapp's fifth claim as a claim of discrimination based on sex under the NFEPA; the court specifically addressed Knapp's arguments that it characterized as a failure-to-hire claim. On appeal, Knapp makes two main arguments with regard to her fifth claim: (1) that the district court erred when it failed to analyze the fifth claim as a claim of improper classification under the NFEPA and (2) that the court erred when it determined that she had failed to show similarly situated male employees who were treated differently. Knapp claims that because of these errors, the district court erred when it sustained the defendants' motion for summary judgment on her fifth claim and that the court abused its discretion when it overruled her motion to alter or amend the judgment in order to consider the fifth claim as a claim of improper classification.

[4] We note first that we have stated that the NFEPA is patterned after federal Title VII and that it is appropriate to look to federal court decisions construing Title VII for guidance

with respect to the NFEPA. See *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016). Like the plaintiff's claim in *Hartley*, Knapp's fifth claim is a claim of disparate treatment, that is, "a claim based on an employer's treating some people less favorably than others because of their race, color, religion, sex, or other protected characteristics." 294 Neb. at 891, 885 N.W.2d at 692-93. In *Hartley*, we looked to federal case law applying Title VII, specifically *McDonnell Douglas Corp., supra*, to provide a framework for a discrimination claim under the NFEPA. We noted in *Hartley* that the *McDonnell Douglas Corp.* framework is not the exclusive method of proving disparate treatment, but in this case, as in *Hartley*, the district court used that framework and the parties do not dispute that it was the appropriate approach.

The first step under the *McDonnell Douglas Corp.* framework is that "first the plaintiff has the burden of proving a prima facie case of discrimination." *Hartley*, 294 Neb. at 893, 885 N.W.2d at 693. In *Hartley*, the plaintiff set forth a failure-to-promote claim, and therefore, we stated that a prima facie case of discrimination in that case consisted of "demonstrating (1) the employee is a member of a protected group, (2) the employee was qualified and applied for a promotion to an available position, (3) the employee was rejected, and (4) a similarly situated employee, not part of the protected group, was promoted instead." 294 Neb. at 893, 885 N.W.2d at 693.

[5,6] We note, however, that courts typically modify the formulation of a prima facie case of employment discrimination based on the specific type of discrimination claimed in a specific case. Although the requirements set forth in *Hartley* focused on a claim of failure to promote, the Nebraska Court of Appeals in *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005), set forth a more universal formulation of the required showing for a prima facie case of gender discrimination. The Court of Appeals stated that a "prima facie case of gender discrimination requires

the plaintiff to prove that he or she (1) is a member of a
protected class, (2) was qualified to perform the job, (3) suf-
fered an adverse employment action, and (4) was treated dif-
ferently from similarly situated persons of the opposite sex."
*Helvering*, 13 Neb. App. at 842, 703 N.W.2d at 154 (citing
*Riggs v. County of Banner*, 159 F. Supp. 2d 1158 (D. Neb.
2001) (considering Title VII claim of discrimination based
on sex)). The Court of Appeals further stated that the test to
determine whether employees are similarly situated to war-
rant a comparison to a plaintiff is a rigorous one and that the
plaintiff has the burden of demonstrating that there were indi-
viduals similarly situated in all relevant aspects to the plaintiff
by a preponderance of the evidence. *Helvering, supra* (citing
*E.E.O.C. v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003) (consid-
ering Title VII retaliation claim based on race)).

### (a) Classification

Knapp claims that the district court erred because it failed
to analyze her fifth claim as a claim of improper classification
under the NFEPA. She raises this argument in connection with
her claims of error with respect to the court's grant of summary
judgment and its overruling of her motion to alter or amend
the judgment.

Knapp's fifth claim was based on § 48-1104, which is part
of the NFEPA and which provides as follows:

It shall be an unlawful employment practice for an
employer:

(1) To fail or refuse to hire, to discharge, or to harass
any individual, or otherwise to discriminate against any
individual with respect to compensation, terms, condi-
tions, or privileges of employment, because of such indi-
vidual's race, color, religion, sex, disability, marital sta-
tus, or national origin; or

(2) To limit, advertise, solicit, segregate, or classify
employees in any way which would deprive or tend to
deprive any individual of employment opportunities or
otherwise adversely affect such individual's status as an

employee, because of such individual's race, color, religion, sex, disability, marital status, or national origin.

Knapp maintains that the district court analyzed her fifth claim as a claim under only § 48-1104(1), which makes it an unlawful employment practice to, inter alia, "fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to compensation . . . because of such individual's . . . sex." She contends that the court should have also analyzed the claim as a claim under § 48-1104(2), which makes it an unlawful employment practice to, inter alia, "classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect such individual's status as an employee, because of such individual's . . . sex."

In support of her contention that the court analyzed the claim only under subsection (1) and not under subsection (2), Knapp focuses on the portion of the district court's summary judgment analysis in which it considered the failure-to-hire aspects of the fifth claim. However, in addition to considering the claim specifically as a failure-to-hire claim, the district court also analyzed the claim as a more generalized claim of discrimination utilizing the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Knapp contends that she showed a prima facie case of improper classification under that framework, and she does not offer an alternative approach.

Although Knapp used "classification" language in her complaint, and we acknowledge that the district court did not specifically refer to her fifth claim as one of improper "classification," this is of no legal consequence. We believe that a claim of improper classification under § 48-1104(2) is subject to the *McDonnell Douglas Corp.* framework and that in such a case, the "adverse employment action" is an improper classification, which must be demonstrated by evidence of prima facie discrimination. In this case, the district court used the *McDonnell Douglas Corp.* framework and determined that Knapp had failed to show that there were similarly situated

male employees who were treated differently. As a consequence of this determination, the court effectively determined that Knapp had failed to show similarly situated male employees who were classified differently than she was and that therefore, she failed to show a prima facie case of discrimination resulting from an improper classification under § 48-1104(2).

### (b) Similarly Situated

Knapp further argues that the court erred when it determined with respect to her fifth claim that she failed to show similarly situated male employees who were treated differently. As noted above, this finding was dispositive of the improper classification aspects of Knapp's claim as well as the other aspects of the claim. Knapp argues that she presented evidence of similarly situated males because she presented evidence that male employees were moved from nontenure positions into tenure track positions with higher pay.

The district court determined that Knapp failed to show similarly situated males because the males to whom she compared herself had duties that were different from or in addition to the duties that she performed. Because Knapp did not show the existence of males who were similarly situated, she could not show that males were treated differently. Any differences in compensation or classification could be explained by the differences in duties.

Knapp argues that the men were treated differently because they moved on to tenure track positions. But when the men moved on to such positions, they took on additional duties and therefore were no longer similarly situated. Therefore, to the extent that Knapp compares herself to male employees who moved on to tenure track positions while she did not, her argument is no longer that she was treated differently from similarly situated male employees. Instead, her argument is more properly characterized as a failure to promote or a failure to hire claim because she is arguing the male employees were able to move into tenure positions while she was not.

The district court analyzed Knapp's fifth claim as a failure to hire claim, and the court determined that the claim failed as such because Knapp did not show that she had attempted to obtain a tenure track position and therefore could not show that the defendants refused to hire her for or promote her to such a position.

Viewing the evidence in the light most favorable to Knapp, we find she did not present evidence of similarly situated males, and therefore, she was unable to show under § 48-1104(1) that they were treated differently, whether such different treatment was with respect to compensation, classification, or hiring for or promotion to tenure track positions.

We conclude that with respect to Knapp's fifth claim under § 48-1104(1) and (2), the district court did not err when it reached the determinations noted above and sustained the defendants' motion for summary judgment and overruled Knapp's subsequent motion to alter or amend challenging such determinations.

### 2. FOURTH CLAIM: DISCRIMINATORY WAGE PRACTICES BASED ON SEX

Knapp's fourth claim was a claim of wage discrimination based on sex under §§ 48-1219 through 48-1227.01. The district court determined that Knapp had failed to identify a male employee with comparable duties and therefore had not shown that a male employee performing the same duties was paid more. Knapp claims that the district court erred when it determined that she failed to show male employees who had comparable duties.

[7] As an initial matter, we note that the specific statute that underlies Knapp's fourth claim is § 48-1221(1), which provides:

> No employer shall discriminate between employees in the same establishment on the basis of sex, by paying wages to any employee in such establishment at a wage rate less than the rate at which the employer pays any employee of the opposite sex in such establishment for equal work

on jobs which require equal skill, effort and responsibility under similar working conditions. Wage differentials are not within this prohibition where such payments are made pursuant to: (a) An established seniority system; (b) a merit increase system; or (c) a system which measures earning by quantity or quality of production or any factor other than sex.

Knapp's sixth claim, which was dismissed by the federal district court, was a claim of wage discrimination under the federal EPA, 29 U.S.C. § 206(d)(1), which provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

The state and federal statutes are similar, and the Nebraska statute appears to be patterned after the federal statute. Therefore, similarly to our holding in *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016), noted above with regard to the NFEPA and Title VII, we hold that because § 48-1221(1) is patterned after the federal EPA, 29 U.S.C. § 206(d), it is appropriate to look to federal court decisions construing 29 U.S.C. § 206(d) for guidance with respect to § 48-1221(1).

The district court in this case looked to federal court decisions construing the federal EPA when it analyzed Knapp's fourth claim. The court cited *Price v. Northern States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011), in which the U.S. Court of Appeals for the Eighth Circuit stated that when bringing a claim of pay discrimination on the basis of sex pursuant to the federal EPA, "[a] plaintiff must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions" and that "[i]f a plaintiff establishes a prima facie case, the burden then shifts to the defendant to prove one of [the] statutory affirmative defenses." We note that in *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021 (8th Cir. 2002), the Court of Appeals for the Eighth Circuit formulated the prima facie case under the EPA as follows: To establish an equal pay claim, a plaintiff must show by a preponderance of the evidence that (1) she was paid less than a male employed in the same establishment; (2) for equal work on jobs requiring equal skill, effort, and responsibility; (3) which were performed under similar working conditions.

[8] We believe that the framework applicable to a federal EPA claim is also the proper framework to be applied to a claim under § 48-1221(1) for wage discrimination based on sex. Therefore, when bringing a claim of wage discrimination based on sex under § 48-1221(1), a plaintiff must first establish a prima facie case by showing by a preponderance of the evidence that (1) the plaintiff was paid less than a person of the opposite sex employed in the same establishment; (2) for equal work on jobs requiring equal skill, effort, and responsibility; (3) which were performed under similar working conditions. If a plaintiff establishes a prima facie case of wage discrimination based on sex, the burden then shifts to the defendant to prove one of the affirmative defenses set forth in § 48-1221(1).

Using this general framework to analyze Knapp's fourth claim, the district court concluded that Knapp had not

established a prima facie case of wage discrimination, because she had not shown that the male employees to whom she compared herself were performing comparable duties. The court determined that "[a]lthough all faculty named by Knapp as comparators also taught in the clinics as part of their positions, the totality of their duties were [sic] not substantially equal." The court noted that while their positions shared certain duties that Knapp performed, each of the male employees had additional responsibilities including some combination of classroom teaching, research, and service to the faculty, administration, and community.

In terms of the requirements of a prima facie case of wage discrimination based on sex set forth above, we read the district court's determinations as a ruling that Knapp failed to show a male employee who was doing "equal work on jobs requiring equal skill, effort, and responsibility." See *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002). Specifically, the court determined that the male employees to whom Knapp compared herself performed work that required additional responsibilities.

In this regard, we note that the Eighth Circuit Court of Appeals in *Hunt* explained the required showing of "equal work" by stating that the jobs need not be identical to be considered "'equal'" under the EPA and they need only be substantially equal. 282 F.3d at 1029. The court further stated that neither job classifications nor titles are dispositive for determining whether jobs are equal for purposes of the EPA and that determining whether two jobs are substantially equal requires a practical judgment on the basis of all the facts and circumstances of a particular case, including factors such as level of experience, training, education, ability, effort, and responsibility. *Hunt, supra*. The court further stated that two jobs could require insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility and still be substantially equal. *Id*. We find these standards to be sound, and we adopt them and apply them to this case.

With these considerations in mind, we determine that Knapp's evidence did not show that the male employees to whom she compared herself were doing "equal work . . . requiring equal . . . responsibility." See *Hunt*, 282 F.3d at 1029. The evidence showed that the male employees had additional responsibilities that were not insubstantial or minor differences from the work Knapp was doing. We conclude therefore that the district court did not err when it sustained the defendants' motion for summary judgment on Knapp's fourth claim; nor did the court abuse its discretion when it overruled Knapp's motion to alter or amend such judgment.

### 3. SEVENTH CLAIM: RETALIATION UNDER THE NFEPA

Knapp's seventh claim was a claim of retaliation under the NFEPA. Knapp claims on appeal that the district court erred in its determination that she had failed to show that a reasonable person would have found the conditions of employment intolerable or that the defendants either intended to force her to resign or could have reasonably foreseen that she would do so as a result of their actions.

[9] A claim of retaliation under the NFEPA is based on § 48-1114, which provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because he or she . . . has opposed any practice made an unlawful employment practice by the [NFEPA]." The Nebraska Court of Appeals in *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005), noted that the framework for a claim of retaliation under the NFEPA is the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), used for other unlawful employment practice claims under the NFEPA as set forth above in connection with our analysis of Knapp's fifth claim. The Court of Appeals for the Eighth Circuit set forth the formulation of a prima facie case in a retaliation claim as being that a plaintiff must establish such case by showing (1) he or she

engaged in protected conduct, (2) he or she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action. See *Wood v. SatCom Marketing, LLC*, 705 F.3d 823 (8th Cir. 2013). The same formulation applies to set forth a prima facie case of retaliation under § 48-1114.

Knapp's claim of retaliation under the NFEPA was that she had engaged in a protected activity when she opposed practices by Ruser that she alleged amounted to discrimination based on sex. The district court determined that the claim failed because Knapp had not shown that she "'suffered an adverse employment decision.'" Knapp did not allege that the law school had terminated her employment because she had complained to Ruser or to the dean; instead, she argued that after she complained to Ruser, he created an environment that drove her to leave her employment. The district court determined that Knapp's evidence on summary judgment regarding Ruser's behavior did not rise to the level of an adverse employment action.

[10] To satisfy the "adverse employment action" requirement in a retaliation claim, see *Helvering*, 13 Neb. App. at 842, 703 N.W.2d at 154, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse," see *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). This, in turn, requires a showing that the employment action "'might have "dissuaded . . ."'" a reasonable worker from reporting the alleged unlawful practice. *Id.* To meet this burden, a plaintiff must demonstrate that the employment action was material, not trivial, and that it resulted in some concrete "'injury or harm.'" *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014). In this regard, it has been noted that reporting discriminatory behavior "'cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Id*. (quoting *White, supra*).

Viewing Knapp's evidence in the light most favorable to her and applying the standards set forth above, we determine that Knapp did not show the sort of "adverse employment action" necessary to support a claim of retaliation under § 48-1114 of the NFEPA. Ruser's alleged change in attitude and the behaviors he displayed after Knapp raised concerns regarding gender discrimination are more properly characterized as "petty slights" and "minor annoyances" than as the sort of actions a reasonable employee would have found to be materially adverse and that would have resulted in some concrete injury or harm. We therefore conclude that the district court did not err when it sustained the defendants' motion for summary judgment as to Knapp's seventh claim nor did the court abuse its discretion when it overruled Knapp's motion to alter or amend such judgment.

### 4. Ninth Claim: Public Policy Retaliation

Finally, Knapp's ninth claim was a claim of retaliation based on public policy considerations. Similar to its disposition of the seventh claim, the district court rejected this claim on the basis that Knapp's evidence did not show material retaliatory conduct. Knapp claims on appeal that the district court erred in this determination because, she argues, she and Ruser were "de facto law partners" and because ethical concerns relating to law firms give rise to a public policy claim and require that a different standard be used to determine whether there was retaliation. Brief for appellant at 33.

[11] Knapp argues that her ninth claim is cognizable as a "tort-based claim for retaliation when it violates public policy," *id.* at 31, and she cites *Trosper v. Bag 'N Save*, 273 Neb. 855, 734 N.W.2d 704 (2007), as support for this theory. In *Trosper*, we recognized that generally, an employer may terminate the employment of an at-will employee at any time, but we recognized a public policy exception to the at-will employment doctrine. We described the exception as follows:

> Under the public policy exception, we will allow an employee to claim damages for wrongful discharge when

the motivation for the firing contravenes public policy. The public policy exception is restricted to cases when a clear mandate of public policy has been violated, and it should be limited to manageable and clear standards. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.

*Trosper*, 273 Neb. at 857-58, 734 N.W.2d at 707. The specific exception noted in *Trosper* originated in *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003), where we recognized a public policy exception to the at-will employment doctrine and allowed an action for retaliatory discharge when an employee has been discharged for filing a workers' compensation claim. *Trosper* extended *Jackson* to include a claim for retaliatory demotion for filing a workers' compensation claim.

Knapp argues that a public policy exception should be recognized to allow her ninth claim and that the public policy supporting her claim consists of ethical considerations governing the legal profession and law firms as expressed in the Nebraska Rules of Professional Conduct. She contends that the defendants retaliated against her because she raised ethical concerns regarding Ruser's conduct at the civil clinic.

Whether or not a public policy exception related to such ethical concerns should be recognized, we note that in cases like *Trosper*, the public policy exception is fashioned as an exception to the at-will employment doctrine. As such, the exception has been limited to claims of retaliatory discharge and, as extended in *Trosper*, claims of retaliatory demotion. Knapp's evidence does not show that the defendants either discharged or demoted her after she raised ethical concerns; nor does it show a constructive discharge or some other adverse employment action that falls short of a discharge or demotion. As we noted in connection with Knapp's seventh claim for retaliation under the NFEPA, Knapp has not shown any

adverse employment action that was material and that resulted in some concrete injury or harm.

Viewing the evidence in the light most favorable to Knapp, we determine she has not shown employment-related retaliation that would give rise to a claim based on public policy. Therefore, we conclude that the district court did not err when it sustained the defendants' motion for summary judgment on Knapp's ninth claim; nor did the court abuse its discretion when it overruled Knapp's motion to alter or amend such judgment.

## VI. CONCLUSION

We conclude that the district court did not err when it sustained the defendants' motion for summary judgment with respect to Knapp's fourth, fifth, seventh, and ninth claims and that it did not abuse its discretion when it overruled Knapp's subsequent motion to alter or amend its judgment. We therefore affirm the district court's orders.

AFFIRMED.

STACY, J., not participating.