# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1432

_____

WireCo WorldGroup, Inc.,

*Plaintiff - Appellant*,

v.

Liberty Mutual Fire Insurance Company; The First Liberty Insurance Corporation,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: November 15, 2017
Filed: July 31, 2018

_____

Before COLLOTON and GRUENDER, Circuit Judges, and HOLMES,[1] District
Judge.

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for
the Western District of Arkansas, sitting by designation.

COLLOTON, Circuit Judge.

WireCo WorldGroup, Inc. brought a five-count action against its workers' compensation insurance carriers, Liberty Mutual Fire Insurance Company and The First Liberty Insurance Corporation (collectively, "Liberty"). The lawsuit sought damages for excess premiums that WireCo allegedly paid on three of Liberty's insurance policies.

The district court,[2] at the pleading stage, dismissed a claim for vexatious refusal to pay under Mo. Rev. Stat. § 375.420. The district court then granted summary judgment for Liberty on WireCo's remaining breach of contract claims. WireCo appeals the dismissal of all counts. Although our reasoning differs from that of the district court in some respects, we ultimately affirm the judgment.

I.

WireCo is a wire and cable company that operates in many States, including Texas and Missouri. In 2009, WireCo purchased a workers' compensation insurance policy from Liberty. The 2009 policy was in effect from June 30, 2009, to June 30, 2010. WireCo purchased renewal policies from Liberty in 2010, 2011, and 2012, respectively. Each policy contained an "Information Page," endorsements, and terms and conditions.

The policies specified that Liberty would calculate the premium for each policy twice. Before the policy went into effect, Liberty would calculate an estimated premium, and WireCo agreed to pay this amount before the policy expired. After the policy expired, Liberty would calculate an actual premium in light of developments

---

[2]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

during the term. If the actual premium differed from the estimate, then the policy provided that WireCo would make an additional payment or receive a refund, as the case may be.

Each policy had two sections that explained how premiums would be calculated. Both sections identified "rating plans" as an element in the calculation. Item 4 of each policy's Information Page read: "Premium: The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and *Rating Plans*." (Emphasis added). Part Five of each policy's "General Section" read: "All premium for this policy will be determined by our manuals of rules, rates, *rating plans* and classifications." (Emphasis added). According to WireCo, the references to "rating plans" meant the "schedule rating plans" that Liberty had filed with each State. One point of dispute is whether two particular schedule rating plans from Missouri and Texas were incorporated by reference into the renewal policies.

Schedule rating is a method of adjusting the premium on workers' compensation insurance to account for risk characteristics that affect the probability or severity of future losses. When an insurance policy covers the insured company's operations in multiple States, the carrier must calculate a schedule rating factor for each State in accordance with the schedule rating plan it filed with the State. A schedule rating factor can take the form of a credit, which lowers the premium on the policy, or a debit, which increases the premium on the policy.

In its complaint, WireCo alleged that Liberty breached the 2010, 2011, and 2012 renewal policies because it modified the Missouri and Texas schedule rating factors without complying with the procedures laid out in the Missouri and Texas schedule rating plans. In relevant part, the Missouri Schedule Rating Plan stated:

> 2. No Schedule debit or credit can take effect until the evidence supporting the modification is in our files.

. . . .

> 5. The customer will be informed in writing within ninety (90) days of the policy inception or renewal date, of the basis for any schedule debit or credit applied. If the policy is subject to any changes in its schedule debits or credits upon renewal, we will notify the customer.

The Texas Schedule Rating Plan included the following provisions:

> 4. At the time that the schedule rating factor is applied, the carrier must have documentation on file detailing the basis for the credit or debit.

> 5. The effective date of the schedule rating factor must be on or after the date of the carrier's receipt of the documentation supporting the basis for the schedule rating factor.

In the initial 2009 policy, Liberty calculated WireCo's premium using a Missouri schedule rating credit of 4.2%, but then adjusted the rating each year as follows: 2010 (1.3% credit), 2011 (15% debit), 2012 (25% debit). In advance of each renewal, Liberty provided WireCo with a policy proposal that included the modified Missouri schedule rating factors. WireCo alleged in Counts I, II, and III, however, that Liberty failed to give WireCo notice of these modifications in the manner required by the Missouri Schedule Rating Plan, and thereby breached the 2010, 2011, and 2012 renewal policies, respectively. WireCo contends that it was damaged by the increased premiums it paid as a "direct and proximate result" of Liberty's breaches of contract.

WireCo also objects to Liberty's modification of the Texas schedule rating factor in the 2012 renewal policy. In the 2011 renewal policy, Liberty calculated WireCo's premium without applying a Texas schedule rating factor, but then applied a 40% debit in 2012. Liberty included this modified schedule rating factor in the 2012 renewal policy proposal that it provided to WireCo. But WireCo alleged in

Count IV that Liberty did not have sufficient documentation in its file to support the schedule rating modification as required by the Texas Schedule Rating Plan, and thus breached the 2012 renewal policy by modifying the rating factor. WireCo contends that it was damaged by the increased premiums that resulted from this breach.

As an alternative theory, WireCo alleged in Count V that "[t]he excess premiums paid by WireCo that Liberty Mutual has refused to refund is 'loss' as contemplated by Mo. Rev. Stat. § 375.420." This statute provides for the recovery of a "loss under a policy" that the insurer refuses to pay "without reasonable cause or excuse." Mo. Rev. Stat. § 375.420. In total, WireCo contends that Liberty overcharged on premiums by $545,561.00.

The district court dismissed WireCo's statutory claim, concluding that WireCo failed to state a claim on which relief can be granted. The court then granted summary judgment for Liberty on WireCo's breach of contract claims. The court reasoned that the Missouri and Texas schedule rating plans were not incorporated into the renewal policies, so that Liberty's alleged violations of the rating plans' notice and documentation requirements did not constitute breach of contract.

II.

We review the district court's grant of a motion to dismiss *de novo*. *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 788 (8th Cir. 2006). Dismissal is proper where the plaintiff's complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

We first address WireCo's claim that Liberty's refusal to refund premium overpayments constituted a "loss" that is recoverable under Missouri's vexatious

refusal to pay statute, Mo. Rev. Stat. § 375.420. The district court dismissed this claim, reasoning that "[t]he plain language and established purpose of the statute indicate that it applies to claims filed under a policy that relate to a covered loss," and that "[a] breach of contract claim of overcharging or of failure to refund premium" is not a loss contemplated by the statute. We agree with this interpretation of the statute.

Missouri law permits an insured to recover damages and attorney's fees when an insurance company refuses to pay for a "loss under a policy" if the company "has refused to pay such loss without reasonable cause or excuse." Mo. Rev. Stat. § 375.420.[3] WireCo contends that "any loss" includes not only an insurer's unreasonable failure to pay claims under the insurance policy, but also an insurer's unreasonable refusal to refund excess premiums. WireCo argues that the statute's use of the term "loss" rather than "claim" suggests a broader meaning. We agree with the district court, however, that a "loss" under § 375.420 does not include excess premium payments.

---

[3]The statute provides in full:

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

When "[i]nterpreting state statutes, this court applies that state's rules of statutory construction." *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). Missouri's rules provide that where, as here, "statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009). Where a dictionary provides multiple definitions, Missouri courts look to the context in which the term appears to ascertain which definition applies. *See, e.g.*, *Estate of Williams v. Williams*, 12 S.W.3d 302, 306 (Mo. 2000); *In re A.S.O.*, 75 S.W.3d 905, 910 (Mo. Ct. App. 2002); *L.C. Dev. Co., Inc. v. Lincoln County*, 26 S.W.3d 336, 340 (Mo. Ct. App. 2000). "Most common English words have a number of dictionary definitions," but "[o]ne should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012).

Section 375.420 is an insurance provision. When "loss" is defined in the insurance context, the term ordinarily means "the amount of an insured's financial detriment due to the occurrence of a stipulated contingent event (as death, injury, destruction, or damage) in such a manner as to charge the insurer with a liability under the terms of the policy." *Webster's Third New International Dictionary* 1338 (2002); *see also American Heritage Dictionary* 1037 (5th ed. 2016) (defining "loss" as "[t]he amount of a claim on an insurer by an insured"); *Random House Webster's Unabridged Dictionary* 1137 (2d ed. 1997) (defining "loss" as the "occurrence of an event, as death or damage of property, for which the insurer makes indemnity under the terms of a policy"); *Black's Law Dictionary* (10th ed. 2014) (defining "loss" as "[t]he amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable"). When considered in proper context, the statutory term "loss" includes claims under an insurance policy, but does not include financial detriment suffered as a result of excess premium

payments. We therefore affirm the dismissal of WireCo's claim under Mo. Rev. Stat. § 375.420 for alleged vexatious refusal to pay.[4]

## III.

The parties dispute which of WireCo's breach of contract theories were properly before the district court at summary judgment. In its summary judgment papers, WireCo presented two additional grounds for breach of contract that it had not pleaded in its complaint: (1) that Liberty breached the renewal policies by failing to obtain documentation as required by Missouri's schedule rating plan, and (2) that Liberty breached the renewal policies by improperly relying on WireCo's loss experience in its calculation of the schedule rating factors. The district court declined to consider these additional theories, reasoning that "[t]he liberal pleading standard under Federal Rule of Civil Procedure 8(a) does not afford a plaintiff with an opportunity to raise new claims at the summary judgment stage." WireCo disputes the district court's ruling, arguing that it did not raise new *claims* but rather new *grounds* for breach of contract, and that Rule 8(a) does not require a plaintiff to plead each separate ground for breach of contract in its complaint.

We conclude that the district court did not abuse its discretion when it determined that only those theories of breach that WireCo pleaded in its complaint were before the court. Although the pleading requirements under Rule 8(a) are relatively permissive, the essential function of notice pleading is to "give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original)

---

[4]Because the meaning of "loss" is clear in context, we need not consider Liberty's contention that § 375.420 should be construed "strictly" against the plaintiff because the statute is penal in nature. *See Missouri ex rel. Pemiscot County v. W. Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995); *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 78 (Mo. Ct. App. 1995).

(emphasis added) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004); *cf. Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009).

WireCo's complaint was specific as to the nature, bases, and grounds of Liberty's alleged breaches of contract. Counts I, II, and III of WireCo's complaint alleged that Liberty breached the 2010, 2011, and 2012 renewal policies, respectively, by failing to comply with the notice requirements of the Missouri Schedule Rating Plan. Count IV alleged that Liberty breached the 2012 renewal policy by failing to obtain proper documentation as required by the Texas Schedule Rating Plan. Liberty had notice of these alleged grounds for the breach of contract claims and was entitled to tailor its defense accordingly; it was not required to intuit additional theories of liability that were not apparent from WireCo's complaint. WireCo contends that Liberty learned of its new grounds for breach over the course of discovery, but the materials to which WireCo refers are insufficient to demonstrate new grounds for relief that were not alleged in the complaint.[5]

We therefore conclude that the district court did not abuse its discretion when it declined to consider WireCo's unpleaded grounds for breach on the eve of

---

[5]WireCo cites interrogatories asking Liberty to specify documents in its files on which the insurer based the rating factors for Missouri in the 2010 and 2011 renewals. But merely asking about these documents did not notify Liberty that WireCo intended to pursue a new ground asserting that Liberty breached the renewal policies by failing to have adequate documentation in its file with respect to Missouri operations. WireCo also cites the deposition testimony of one of its executives, but the record citation points to a cover page and fails to specify any testimony. Even if we were required to search through the excerpts that follow the cover page, none of them properly placed Liberty on notice that WireCo was asserting a breach on the ground that the insurer improperly relied on WireCo's loss experience.

summary judgment. Like the district court, we limit our review to those grounds and theories that WireCo properly pleaded in its complaint.

The district court granted summary judgment for WireCo because it concluded that the Missouri and Texas schedule rating plans were not incorporated into the renewal policies. As such, the court concluded that Liberty's alleged incompliance with the notice and documentation requirements did not constitute breach of contract. We review this ruling *de novo*, viewing the record in the light most favorable to WireCo. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

We have doubt about the district court's conclusion on incorporation of the policies. Liberty filed schedule rating plans with both Missouri and Texas that set forth its procedure for schedule rating in each State. The renewal policies in question dictate that premiums be determined in accordance with "rating plans." And in line with this dictate, each renewal policy contains pages of estimated premium calculations in which each State's "Schedule Rating" is one input that goes into the estimated premium. The renewal policies do not merely mention the rating plans; they memorialize an agreement between the parties that the premium for each policy will be determined in part by these rating plans. WireCo thus argues with some force that the schedule rating plans are incorporated into the policies, and that Liberty was required to comply with the terms of the plans before changing the rating factors.

Even so, we may affirm on any ground supported by the record, and Liberty argues alternatively that WireCo failed to present evidence that it suffered damages from the alleged breaches of contract. In Missouri, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). Thus, even assuming the rating plans were incorporated into the policies, and that Liberty

-10-

breached the contracts, WireCo must present evidence that Liberty's alleged breaches caused WireCo to suffer damages.

The alleged breaches are that Liberty failed to meet the procedural requirements of the Missouri and Texas schedule rating plans. Specifically, WireCo claimed that Liberty did not give proper notice before modifying the Missouri schedule rating factor, and that Liberty did not have proper documentation in its files when it modified the Texas schedule rating factor.

"The goal in awarding damages is to put the non-breaching party in the same position as if the contract would have been performed." *Fire Sprinklers, Inc. v. Icon Contracting, Inc.*, 279 S.W.3d 230, 235 (Mo. Ct. App. 2009) (quoting *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 532 (Mo. Ct. App. 2008)). Therefore, the proper measure of damages in this scenario is the difference between the premiums that WireCo actually paid under the renewal policies and the premiums that WireCo would have paid if Liberty had given proper notice of the modification and maintained proper documentation in its files. That relief would place WireCo in the same position that it would have enjoyed if Liberty had performed on the contract.

WireCo, however, did not present evidence that proper notice from Liberty of schedule rating modifications or proper documentation in Liberty's files would have resulted in lower insurance premiums for WireCo's insurance coverage. WireCo concedes that it is required by law to purchase workers' compensation insurance. Yet WireCo submitted no evidence that it could have obtained a less expensive policy from Liberty or any other insurer in 2010, 2011, or 2012. WireCo's chief accounting officer testified that WireCo does not have any proposals or bids from other insurers for the 2010, 2011, or 2012 calendar years, and he does not know whether WireCo received any such bids. This officer further testified that he does not know whether WireCo had an opportunity to purchase workers' compensation for less than what Liberty was offering for the years in question. Without evidence that WireCo could

have obtained workers' compensation insurance for less than what it actually paid to Liberty, WireCo has not created a genuine dispute about whether it suffered damages.

WireCo argues that its damages are the difference between (1) the premiums that WireCo actually paid and (2) the premiums that WireCo would have paid on the 2010, 2011, and 2012 renewal policies if the premiums had been calculated using the schedule rating factors from prior years. The company argues that its damages can be calculated by substituting the 4.2% Missouri schedule rating credit from 2009 into the 2010, 2011, and 2012 renewal policies, and the 0.0% Texas schedule rating factor from 2011 into the 2012 renewal policy. Under this calculation, WireCo claims it is entitled to $545,561.00 in damages.

WireCo's damages theory is flawed, because there is no evidence that WireCo would have been able to obtain premiums in the disputed years based on the Missouri 2009 schedule rating factor and the Texas 2011 schedule rating factor. Even assuming WireCo is correct that Liberty failed to provide adequate notice or to maintain adequate documentation, these failures do not establish that Liberty was required to offer renewal policies based on outdated rating factors. Liberty's underwriting manager averred that the insurer would not have offered the 2011 and 2012 policies based on the rating factors from previous years, and WireCo mustered no evidence to the contrary.

Proof of damages is an essential element of WireCo's breach of contract claims. Because WireCo failed to present evidence that it would have paid lower premiums if Liberty had complied with the notice and documentation requirements of the Missouri and Texas schedule rating plans, we conclude that Liberty was entitled to summary judgment on WireCo's breach of contract claims.

\*       \*       \*

-12-

The judgment of the district court is affirmed.

_____