# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1884

_____

James F. Trambly,

*Plaintiff - Appellant,*

v.

Board of Regents of the University of Nebraska,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2025
Filed: August 1, 2025

_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

COLLOTON, Chief Judge.

James Trambly sued the Board of Regents of the University of Nebraska alleging discrimination based on disability and retaliation for requesting an

accommodation. The district court[1] granted summary judgment for the Board. Trambly appeals, and we affirm.

## I.

Trambly was hired by the University of Nebraska-Kearney in November 2013 to work as a help desk associate in the Information Technology department. Trambly's duties included responding to requests for assistance, supporting assigned academic departments, and managing student workers. University policy forbade Trambly to misuse the university's computer and network systems.

Trambly's job performance began to decline around July 2017 after he was promoted to the position of workstation support specialist. After outstanding annual performance evaluations through 2017, Trambly received a negative evaluation for the period between April 2017 and March 2018. Trambly's supervisor noted that he had problems with communication, including interjecting himself into colleagues' work, becoming visibly overwhelmed and frustrated, interrupting clients, and spending excessive time on service calls. Trambly said that he agreed with "most" of his supervisors comments. Trambly's job performance continued to worsen through the remainder of 2018.

In November 2018, Trambly accused a co-worker of interfering with his e-mail account, and the university launched an investigation. On January 30, 2019, Trambly decided to take matters into his own hands: without authorization, he pulled a hard drive from a university computer to gather what he thought was evidence relevant to the investigation. Trambly's unauthorized removal of computer equipment violated

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

the university's policy on electronic information systems. The university terminated Trambly's at-will employment on February 8, 2019.

In July 2020, Trambly brought this action in state court, and the Board removed the case to federal court. Trambly's complaint alleged disability discrimination in the form of a hostile work environment, disparate treatment, and failure to accommodate under the Rehabilitation Act and the Nebraska Fair Employment Practices Act (NFEPA). *See* 29 U.S.C. § 701 *et seq.*; Neb. Rev. Stat. § 48-1101, *et seq*. Trambly also alleged retaliation for requesting accommodations in violation of the Rehabilitation Act, NFEPA, and Title V of the Americans with Disabilities Act (ADA). *See* 42 U.S.C. § 12101 *et seq*. The district court denied as futile Trambly's motion to amend his complaint to allege a violation of Title II of the ADA because the court concluded that a claim of employment-based discrimination could arise only under Title I.

In his complaint, as relevant here, Trambly alleged that he made the university aware of a documented "mental impairment," later identified as attention deficit/hyperactivity disorder (ADHD); that he repeatedly was denied accommodations during his employment; that he was disciplined in retaliation for requesting accommodations; that his supervisor, Heidi Haussermann, threatened in 2016 that she would fire Trambly "if he continued to bring up his disabilities"; and that he was terminated in February 2019 "in retaliation for requesting accommodations."

The district court granted summary judgment for the Board. The court concluded that "[e]ven drawing every possible inference in his favor, Trambly has not presented any evidence that would allow a finder of fact to find for him on any of his claims." Trambly appeals the grant of summary judgment and the denial of leave to amend his complaint.

-3-

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Trambly, the nonmoving party. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).

The Rehabilitation Act, NFEPA, and the ADA are similar in substance, with distinctions not relevant here. *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (comparing the Rehabilitation Act and the ADA); *Orr v. Wal-Mart Stores*, 297 F.3d 720, 723 (8th Cir.2002) (comparing NFEPA and the ADA). Decisions applying the statutes, as relevant here, are "applicable and interchangeable." *Gorman*, 152 F.3d at 912 (internal quotation omitted).

II.

Trambly contends that the university discriminated against him on the basis of disability, through a hostile work environment, disparate treatment, and failure to provide reasonable accommodation. Trambly's disability-related claims fail because he does not meet the threshold requirement to show he suffers from an "impairment that substantially limits one or more of [his] major life activities." Neb. Rev. Stat. § 48-1102(9); *see* 29 U.S.C. § 705(20)(A)(i) (requiring an "impairment which . . . constitutes or results in a substantial impediment to employment"); *see Kirkeberg*, 619 F.3d at 903.

Trambly maintains that he has ADHD, which limits his ability to "speak, listen, concentrate, think, learn, and work." In support of his claim, Trambly presented a report from an asthma specialist whom he saw in 1996 when he was thirteen years old. Under "Past Medical History," the report says that Trambly "carried a diagnosis of . . . ADHD." Trambly, now in his forties, provides no current evidence that he is

-4-

afflicted with a condition of ADHD that limits his life activities. Trambly's unsupported allegations are insufficient to support a finding in his favor on this issue. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).[2]

In response to the defendant's motion for summary judgment, Trambly presented three more alleged disabilities that he did not plead in his complaint: immune suppression, asthma, and Crohn's disease. Under Federal Rule of Civil Procedure 8(a), however, Trambly's claim may rest only on the ground raised in his complaint: ADHD. "[T]he essential function of notice pleading is to 'give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*.'" *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (second alteration in original).

The complaint notified the Board of Trambly's claim that he was disabled by virtue of a mental impairment, ADHD. To plead additional claims of disability discrimination, Trambly should have alleged in his complaint the nature of those disabilities and the resulting limitations and impairments. *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025) (dismissing a disability discrimination claim where the plaintiff pleaded the legal conclusion of having a disability but did not include factual allegations about the nature and consequences of the disability). The Board "was not required to intuit additional theories of liability that were not apparent from [Trambly's] complaint." *WireCo*, 897 F.3d at 993.

---

[2]Trambly argues that the district court failed to rule on his Rehabilitation Act claim, but the court adequately resolved this claim by dismissing all federal claims. A separate assessment of the particular claim was unnecessary because the legal standards are "interchangeable." *Gorman*, 152 F.3d at 912 (internal quotation omitted).

### III.

Trambly next contends that the district court erred by dismissing his retaliation claims. Trambly argues that after he requested accommodations, he was subjected to threats of termination from two supervisors, negative comments and criticisms, a suboptimal performance evaluation, and termination.

To establish retaliation, Trambly must show that (1) he engaged in protected conduct, (2) a reasonable employee would have found the challenged retaliatory action materially adverse, and (3) the adverse action was causally linked to the protected conduct. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (ADA); *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (Rehabilitation Act); *Knapp v. Ruser*, 901 N.W.2d 31, 48 (Neb. 2017) (NFEPA).

An action is materially adverse if it "produces an injury or harm" that "might have dissuaded a reasonable worker from making" a complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (internal quotation omitted); *see Stewart*, 481 F.3d at 1042-43; *Knapp*, 901 N.W.2d at 48; *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 19-20 (1st Cir. 2006) (Rehabilitation Act). Trivial harms such as "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 548 U.S. at 67-68.

Trambly's principal argument is that the district court failed to consider an instance of alleged retaliatory conduct: in 2017, Jane Petersen, one of Trambly's supervisors, directed Trambly to stop requesting accommodations and threatened him with termination after he requested an accommodation for "immune suppression." But Trambly did not allege in his complaint or argue in the district court that Petersen retaliated against him. The district court did not err in declining to consider the matter *sua sponte*, and we decline to consider Trambly's new argument for the first time on appeal. *Orr*, 297 F.3d at 725.

-6-

Trambly raises a second alleged termination threat—*i.e.*, that his immediate supervisor, Haussermann, warned him in 2016 that "if he kept bringing up his disabilities, she would fire him." The record does not support this claim. Trambly cites only an answer to interrogatories in which he says that Haussermann shared her view that the high-level managers "would terminate anyone who would go to HR about them," and that Haussermann once told him to stop discussing his alleged disabilities after he raised the matter "over and over" and "around 8-10 times." This evidence does not show that Haussermann threatened termination.

Trambly also argues that he experienced "negative comments and criticisms" from Haussermann and Petersen regarding his ADHD that "were in direct response to Trambly's . . . request [for] accommodations, effectively discouraging him from requesting accommodations." Trambly cites a comment from Haussermann that Trambly's repeated explanation of his ADHD was "irritating." After Trambly spoke with Haussermann four to five times about ADHD in Spring 2014, Haussermann allegedly told him, "Seriously Jim, I know exactly what ADHD is. [A co-worker] has ADD, I know exactly what it is, STOP BRINGING IT UP, it is irritating." Trambly also asserts that when he reported Haussermann's comments to Petersen, she responded, "You have another disability?" and directed Trambly to speak with Haussermann about it. Trambly estimates that he spoke about ADHD with Petersen "numerous times" and with Haussermann "about 20-30" times over the course of his employment. In 2018, Trambly also met with university administrators and began a formal process of requesting accommodations.

This evidence does not support a finding of unlawful discrimination. Haussermann's comment reflects only that an employee requesting an accommodation must act reasonably in communicating with supervisors. Petersen's comments were not materially adverse because they would not dissuade a reasonable employee from raising legitimate complaints through the proper channels.

Trambly also has not presented sufficient evidence to show that his suboptimal performance evaluation was causally linked to his protected conduct. The evaluation occurred after Trambly assumed a new position, and Trambly acknowledges that the review accurately reported real problems with his performance in the new role. The evidence does not support a determination that the university concocted a finding of deficient performance to retaliate against Trambly.

On Trambly's termination, the evidence does not support a finding of retaliation. Trambly alleges that he made numerous requests for accommodations during his employment—all without retaliation. Trambly was not fired until February 8, 2019, just nine days after he admitted to misusing university computer equipment. Trambly's policy violation constituted a legitimate reason for his termination, and he does not suggest that the university disciplined other employees less harshly for similar misconduct.

IV.

Trambly next appeals the district court's denial of leave to amend his complaint to bring an ADA claim under Title II. The district court denied leave on the ground that a Title II claim for employment-based discrimination could not withstand a motion to dismiss. When the district court denies leave to amend based on futility, we review the underlying legal conclusions *de novo*. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

Like a majority of the circuits, we conclude that claims for employment-based discrimination do not arise under Title II of the ADA. *See Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013); *Reyazuddin v. Montgomery County*, 789 F.3d 407, 420-21 (4th Cir. 2015); *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015); *Brumfield v. City of Chicago*, 735 F.3d 619, 626-28 (7th Cir. 2013); *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1178 (9th Cir. 1999);

*Elwell v. Oklahoma ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1309-10 (10th Cir. 2012); *but see Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998).

> Title II's operative section provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. By its plain text, Title II applies to generally available services, programs, and activities offered by state and local governments, and not to employment. *Zimmerman*, 170 F.3d at 1173-74; *see* 42 U.S.C. § 12131(1) (defining "public entity"). The statute's definition of "qualified individual with a disability" as "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity" reinforces this understanding. 42 U.S.C. § 12131(2). "Obtaining or retaining a job is not 'the receipt of services,' nor is employment a 'program[ ] or activit[y] provided by a public entity.'" *Zimmerman*, 170 F.3d at 1176 (alterations in original) (quoting 42 U.S.C. § 12131(2)). By contrast, Congress labeled Title I of the ADA "Employment" and placed a number of employment-specific provisions in the title. *See* 42 U.S.C. § 12111(8) (defining the term "qualified individual" with reference to a person's qualifications to work); 42 U.S.C. § 12111(9) (restricting reasonable accommodation to the needs of the workplace); 42 U.S.C. § 12116 (requiring the Equal Employment Opportunity Commission to issue regulations interpreting that title); *see also* 29 U.S.C. § 794(d) (incorporating employment-related standards from Title I in the Rehabilitation Act). The district court correctly ruled that Title II is not applicable to Trambly's employment-based claim, and the court properly denied leave to amend.

\*    \*    \*

The judgment of the district court is affirmed.

_____