IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STEVENS V. COUNTY OF LANCASTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AMANDA L. STEVENS, APPELLANT,

V.

COUNTY OF LANCASTER, NEBRASKA, APPELLEE.

Filed July 2, 2019.    No. A-18-003.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Abby Osborn and Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Patrick Condon, Lancaster County Attorney, Kristy R. Bauer, and Maureen Larsen, Senior Certified Law Student, for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Amanda L. Stevens was employed by Lancaster County (the County) in two positions: the first at the County Assessor and Register of Deeds Department (Register of Deeds) and the second at the Weed Control Department. After she was terminated from both positions, she filed an employment discrimination action in the district court for Lancaster County. She alleged the County discriminated against her based on her gender in her position at the Register of Deeds and retaliated against her in both positions for her opposition to that discrimination. The County filed a motion for summary judgment, which the district court granted. On appeal, Stevens challenges the district court's grant of summary judgment. We conclude that the County met its burden to

- 1 -

show there was no genuine dispute as to any material fact. As a result, we affirm the district court's order.

## II. BACKGROUND

Stevens began her employment with the County in the Register of Deeds in January 2014. She worked in the GIS and Parcel Administration Division, which was internally referred to as the "mapping division." She was one of five employees in the division, and the only woman. Her job title was "land record technician I-mapping." Although the position required some communication with property owners and members of the public, Stevens' main task was recording deed information into the division's internal system. During her time at the mapping division, Stevens was the only technician I, and she worked on over 30 property documents each day.

After Stevens' 6-month probationary period, she received a performance evaluation that approved a merit-based pay increase. The review contained the following comments from Dave Chamberlin, who was one of Stevens' supervisors:

> 1. Accuracy is more important than speed, so slow down and make sure everything is seen. If ever a question comes up, don't hesitate to ask.
> 2. Great job regarding communication with title co's, atty's, etc. Pleasant attitude with rather unpleasant people.
> 3. If a mistake is found by any of us, find the best and accurate [sic] way to correct. We all make them, and this relates to number 1.
> 4. Excellent performance on getting to work on time, and staying on task.

### 1. STEVENS' WARNINGS AND FIRST SUSPENSION

Chamberlin gave Stevens two verbal warnings for data entry errors: the first on August 20, 2014, and the second on October 22, 2014. In both warnings, Chamberlin emphasized the importance of accuracy as opposed to speed. Doug Guess, the GIS manager, was also present during these warnings.

On January 29, 2015, Norman Agena, the Lancaster County Assessor and Register of Deeds, sent Stevens a letter proposing to suspend her for 1 working day for violating the County's personnel rules. The letter explained that Stevens failed to obey her supervisor's directions and that she was incompetent and inefficient in the performance of her work duties. The letter specifically mentioned four data entry errors, which included her misspelling two names in separate transactions, omitting a land grantee in a transaction, and processing an instrument for an incorrect property. After a predisciplinary hearing, Agena reduced the disciplinary action to a written reprimand.

Stevens wrote a rebuttal in response to her written reprimand. Although she admitted to making errors, she felt it was unfair for her to receive discipline for them. The rebuttal explained that Agena had told her that he would evaluate all of her errors "regardless of when the error took place." She was concerned that she could be punished under this standard for errors she made before she received discipline.

After Agena issued the written reprimand, Chamberlin developed a "log file" to help Stevens check her work. At some point, Chamberlin also gave Stevens a "step-by-step" outline of how to perform her duties.

On February 26, 2015, Agena sent another letter to Stevens proposing to suspend her for 1 working day for making five new data entry errors, which were similar to the errors for which she received the previous warnings, in violation of the County's personnel rules. Stevens and a representative from the American Federation of State, County, and Municipal Employees--the union to which Stevens belonged--attended a predisciplinary meeting with Agena. Stevens and the union representative did not present mitigating factors that satisfied Agena, so on March 9 he gave Stevens a letter officially suspending her for the day of March 18.

### 2. STEVENS' APPEAL OF HER 1-DAY SUSPENSION

Stevens appealed her 1-day suspension to the Lancaster County Personnel and Policy Board, which held a hearing on Stevens' claims on May 7, 2015. A deputy Lancaster County attorney represented the County, and a union representative represented Stevens. Chamberlin, Agena, and Stevens testified.

Chamberlin testified that the mapping division took disciplinary action when an employee committed more than three mistakes within a 15-day period. The division only became aware of errors in their system when a member of the public informed them about it. Because the public generally only checked the information in the mapping system when property tax or valuation statements were sent, several months could pass between when an employee made an error and when the division caught it. Chamberlin felt that all of Stevens' errors occurred because she valued speed over accuracy.

In late July or early August 2014, Chamberlin removed 15 of Stevens' 19 duties to help her focus on accuracy. Chris Ladegard, a male mapping division employee who held a position that was similar to Stevens' position, performed the duties removed from Stevens' workload. Nevertheless, Stevens still committed 30 errors in the 8 months before the hearing. To Chamberlin's knowledge, Stevens had received discipline for every error she committed. Chamberlin admitted that Stevens performed her job accurately most of the time.

Agena testified that he was less concerned about internal errors than he was about errors that the public sees. He did not allow anyone in his department to make mistakes, but he recognized that people make mistakes all of the time. Agena admitted that he had a conversation with Stevens in which he told her that data entry is the major part of her job and that she is not allowed to make mistakes. Agena did not know whether Stevens felt welcome in his office because he "[doesn't] get that involved with [his] staff and their lives." He assumed that Stevens would see her supervisor if she did not feel welcome.

Stevens testified that when a male employee in the office learned he had committed an error, he would either immediately correct it or ask Stevens to do so. Originally, Stevens likewise corrected her errors. However, Chamberlin had instructed her to notify him of her errors, rather than correcting them on her own. To help minimize her errors, Stevens reduced the distractions in her work space. Chamberlin moved her to another cubicle to reduce her socialization. Chamberlin

had also directly supervised Stevens' work for about 15 minutes to help her reduce her errors, which she felt was helpful.

Stevens presented evidence of a male colleague's errors that "mimicked" the errors for which she was being disciplined. She noted that her male colleague had not been disciplined for these errors. Stevens believed the County's failure to discipline that employee when it had disciplined her was gender discrimination. She felt that the mapping division had a negative, unwelcoming atmosphere. Stevens did not believe it was fair to discipline her for the errors that were discovered within a 15-day period, when she had committed them over a period of months.

In response to Stevens' discrimination allegation, Chamberlin provided further testimony. He admitted that Ladegard, who was presumably the male employee about whom Stevens spoke, had made errors that were similar to Stevens' errors; however, the frequency of Ladegard's errors had not triggered any disciplinary action. To Chamberlin's knowledge, no one in the mapping division had made 30 errors over the course of 8 months.

After receiving the above testimony, the Board affirmed the 1-day suspension.

### 3. SUBSEQUENT SUSPENSIONS AND PROPOSED TERMINATION

On April 22, 2015, Agena sent Stevens a letter proposing to suspend her for making three data entry errors, which were similar to her other errors. This proposed suspension was for 2 working days. After a predisciplinary meeting, Agena decided to go forward with the suspension. On May 14, Agena gave Stevens a letter detailing that the suspension would take place on May 20 and 21. On May 26, Agena sent Stevens a letter proposing to suspend her for 5 working days for making five data entry errors, which were also similar to her other errors. On June 4, after a predisciplinary meeting, Agena sent Stevens a letter suspending her from June 15 to June 19. On July 6, Chamberlin presented Stevens with her annual performance evaluation in which he commented that speed and accuracy were still major issues with her efforts to process deeds.

On July 15, 2015, Agena sent Stevens a letter proposing to terminate her employment for making six data entry errors, which were similar to the other errors she had made. Although Agena scheduled a predisciplinary meeting, Stevens asked to cancel the meeting because she had accepted a position with the County's Weed Control Department. Agena agreed to waive the 2-week notice, and allowed Stevens to transfer to another position within the County. Agena assigned Emilie Kelly to the position that Stevens had held.

### 4. CHARGES OF DISCRIMINATION

Stevens filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEOC) on July 20, 2015. In the charge, she accused the County of discriminating against her on the basis of her sex and in retaliation for her opposition to the discipline against her. On July 27, she filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), containing similar allegations to the charge she filed with the NEOC. Stevens' NEOC charge of discrimination was transmitted to the County on July 31.

## 5. STEVENS' EMPLOYMENT AT WEED CONTROL DEPARTMENT

Stevens began working at the Weed Control Department on July 23, 2015. Her job title was "Account Clerk III," and her immediate supervisor was Weed Control Superintendent Brent Meyer. Stevens' duties in that role included handling complaints, organizing paperwork, and filing legal documents against noncompliant homeowners.

Stevens claimed in her written "Declaration", which although received into evidence at the summary judgment hearing was not notarized, that she told Meyer on September 2, 2015, that she had a hearing regarding her appeal of a disciplinary action at the Register of Deeds. Stevens did not testify about any such conversation with Meyer on September 2 in her deposition.

On September 18, 2015, Meyer met with Doug McDaniel, the City-County Human Resources Director, to discuss Stevens. McDaniel advised Meyer to document any performance issues or areas of concern. He also advised Meyer to contact the City-County Information Services Division to investigate Stevens' personal use of internet during the workday. If Stevens did not demonstrate fitness for the position, McDaniel informed Meyer that he could remove her under the County's personnel rules.

Meyer sent McDaniel an email on October 1, 2015, listing three performance issues related to Stevens occurring between September 28 and October 1: she once neglected to log a call with a landowner, she once left the office door unlocked when she left, and she once misfiled information on her computer. The email listed a fourth error, but did not specifically attribute that error to Stevens. Based on those and other errors, Meyer recommended to McDaniel that the County terminate her employment during her probationary period. The email explained that Stevens had asked for time off on October 5 and recommended that they wait to terminate her until she returned. Later that day, Stevens filed an electronic leave request, asking for vacation leave on the morning of October 5 for a "personal meeting."

In a document titled "Summary of Performance Issues During Probationary Period," which was dated October 5, 2015, Meyer listed more issues with Stevens' performance. In addition to other errors similar to those listed in Meyer's October 1 email to McDaniel, Meyer also listed that Stevens was using the office internet during work hours for personal matters. Meyer had observed Stevens' personal use of the internet as had Stevens' coworkers. Meyer also once observed her using her cell phone during work hours.

Meyer and McDaniel terminated Stevens' employment with the Weed Control Department at an October 5, 2015, meeting. McDaniel tape recorded, and subsequently transcribed, the meeting. Meyer and McDaniel explained that the Weed Control Department was terminating her employment while she was still in her probation period on account of her performance issues and her personal internet use. Meyer and Stevens then had the following interaction:

> [Meyer]: I don't think it's fair. It's not fair to you and it's definitely not fair to myself and the office to keep somebody around that I don't trust to start with, just because we're out of the office a lot. And if I don't trust the person in the office to be busy and not to be on the internet doing personal things
>
> [Stevens]: Okay and . . . um, even after I've done the stuff, I mean I feel like I've completed things.

[Meyer]: And you have and most of these things have been corrected. Um, and the job performance is one of the issues but the trust issue, and it goes back to the interview process. You know, I just wasn't told everything that I should have been told to make an informed decision on hiring you.

. . . .

[Stevens]: . . . Um, how going forward can I handle the situation with, part of it was with the situation of not letting you know the situation with the other position, um was due to that I wanted to be given the opportunity to show that I can work . . . . But going forward, how should I handle any interviews moving forward with this situation? And sorry, I already had a meeting this morning with that, so, it's been a really bad day.

[Meyer]: Well, and honestly, the previous stuff, when we talked about that, I gave you the benefit of the doubt. I've heard that that's a tough place to work and . . . . But when I can sit here and I can watch that screen and I can see that as soon as I wiggle my chair a little bit that screen starts poppin [sic] out and you're backing out of the internet, you know, I just can't have that. And that's also the main reason.

At the termination meeting, McDaniel informed Stevens of her retreat rights, which would allow her to return to her position in the Register of Deeds office. While Stevens was still weighing whether she wanted to exercise her retreat rights, McDaniel informed her that the County could not ignore her previous performance issues. On October 12, 2015, Stevens decided to return to her position as a lands record technician I in the Register of Deeds. Stevens returned to that position in the Register of Deeds mapping division on October 15, 2015.

6. STEVENS' RETURN TO REGISTER OF DEEDS

On November 9, 2015, Agena presented a letter proposing to terminate her employment with the County for making 19 data entry errors. Agena held a predisciplinary meeting on November 19. Stevens was represented by counsel at the meeting. Chamberlin, Guess, and McDaniel also attended. Stevens asserted that she was not given appropriate training after she returned to the Register of Deeds. She also felt that due to her issues with the work environment in the mapping division, Agena should have placed her in a technician I position in a different division. Despite the mitigating factors Steven's presented, Agena sent her a letter on November 23 terminating her employment with the County.

Stevens was replaced at the Weed Control Department by Jasmine Slezak, a female. And at the Register of Deeds' mapping division, Stevens was replaced by Amanda Matson, a female.

7. DETERMINATION OF NEOC AND SECOND NEOC CHARGE OF DISCRIMINATION

On January 19, 2016, the NEOC issued a determination on Stevens' gender and retaliation discrimination claims. The NEOC found that the evidence presented failed to support the discrimination, and therefore it found no reasonable cause for Stevens' claims. Our record does not contain the EEOC's determination on the same issues.

Stevens filed another charge of discrimination with the NEOC on January 28, 2016. She asserted that the County terminated her employment in both the Weed Control Department and at

the Register of Deeds in response to her previous charge of discrimination. Our record does not contain the NEOC's determination on this discrimination charge.

## 8. EMPLOYMENT DISCRIMINATION SUIT

Stevens filed a complaint in the district court for Lancaster County on April 19, 2016, which complaint alleged that the County violated her rights under the Nebraska Fair Employment Practice Act (NFEPA). She claimed that she was "subjected to different terms and conditions of employment, written up, suspended and terminated and otherwise discriminated against because of her gender, and retaliated against her due to her opposition to the unlawful employment actions, and further retaliated against due to [her] participation in the filing of a charge and investigation with the NEOC." The County admitted to foundational allegations but denied the balance of the allegations contained within Stevens' complaint.

On May 31, 2017, the County filed a motion for summary judgment. The district court held a hearing on the County's motion on June 22. The court received affidavits from Agena, Chamberlin, Meyer, and McDaniel as well as Stevens' deposition, her declaration, and the declaration of her counsel. The contents of this evidence are summarized above.

Stevens also offered the deposition of Robert Colgrove, a lands record technician II with the Register of Deeds. Stevens attached to Colgrove's deposition a charge of discrimination that Scott Stidhem, a former Register of Deeds employee, had filed with the NEOC. The County objected to the attachment on the basis of relevance and insufficient foundation. Stevens responded that Stidhem's claim was a sworn statement that could stand on its own. The County then withdrew its foundation objection, but not its relevance objection. The court received Colgrove's deposition with the attachment for the purpose of summary judgment, subject to the County's relevance objection.

Colgrove testified in his deposition that he did not work in the same division as Stevens at the Register of Deeds, but that their workspaces were near one another. Colgrove had heard that Stevens was making errors. In his division, he edited the technician I's data input. As a result, the supervisor solicited his opinion during performance evaluations. Colgrove never reviewed Stevens' work because she was not in his division. Colgrove's division had a system to track data input errors. Colgrove admitted that an employee's error in his division could result in an error in the mapping division system, which errors in the system could affect the accuracy of a technician I's work in the mapping division.

Colgrove's supervisors at the Register of Deeds once asked him to keep track of Stidhem's errors, and Colgrove generated daily reports of those errors. The subsections of these reports were titled "W," "T," and "F." The letters stood for "wrong track," "typo," and "fields that were forgotten." He denied calling the daily error reports "WTF reports." The reports were generated daily until Stidhem was terminated. Stidhem was not replaced after he left the Register of Deeds.

Stidhem's NEOC charge of discrimination explained that he was terminated for failing to attend work. He alleged the Register of Deeds discriminated against him based on his disability and retaliated against him for filing a discrimination claim. Among his allegations, he claimed that the County generated daily error reports, called "WTF reports," to harass him.

## 9. ORDER GRANTING COUNTY'S MOTION FOR SUMMARY JUDGMENT

On December 4, 2017, the district court entered a 29-page order granting the County's motion for summary judgment as to both of Stevens' claims. The court found that Stevens failed to provide probative evidence proving either of her claims.

As to Stevens' gender discrimination claim, the court found that Stevens' did not adduce any direct evidence of discrimination. With regard to her burden to establish an inference of discrimination, the court found that Stevens failed to prove that she was qualified to perform her job with the Register of Deeds due to the high number of errors she committed. The court also found Stevens failed to adduce sufficient evidence to support a finding that she was treated differently than similarly situated men. Specially, the court found that Stevens failed to show that Ladegard was subject to the same standards that she was, that his errors were similar in frequency to her errors, and that he was not subject to discipline for his errors while she was disciplined for her errors.

Despite its finding that Stevens failed to prove a prima facie case for gender discrimination, the court nevertheless then went on to find that the County articulated a legitimate nondiscriminatory reason for its employment decisions regarding Stevens due to her poor job performance. Finally, the court examined whether Stevens proved that the County's proffered basis for the termination of her employment amounted to pretext. The court concluded that Stevens' evidence was "insufficient as a matter of law to meet the heightened burden to demonstrate pretext." Thus, the court concluded that because Stevens failed to satisfy her burden of proof and failed to create a genuine issue of material fact, the County was entitled to judgment as a matter of law on the gender discrimination claim.

As to Stevens' retaliation claim for her position at the Register of Deeds, the court found that Stevens failed to show that there was a causal link between her suspensions and termination, and her filing and participating in a charge and investigation with the NEOC. The court noted that her suspensions at the Register of Deeds occurred before she filed her charge of discrimination with the NEOC in July 2015. The court also found that Stevens failed to show that her termination from the Register of Deeds was motivated by a desire to retaliate against her. Despite finding that Stevens failed to establish a prima facie case for retaliation as it relates to her suspensions and termination at the Register of Deeds, the court nevertheless proceeded to find that the undisputed facts in the record were sufficient to demonstrate that the County had a legitimate, nondiscriminatory reason for deciding to termination Stevens' employment. Finally, the court found that Stevens failed to satisfy her "heightened" burden of proving that the County's reasons for terminating her were pretextual. As a result, the court concluded the County was entitled to judgment as a matter of law on Stevens' retaliation claim related to her employment at the Register of Deeds.

The court also granted the County's motion for summary judgment regarding Stevens' retaliation claim as it related to her position at the Weed Control Department. Despite the County's concession that Steven met her burden in proving a prima facie case for retaliation as it relates to her removal from her position at the Weed Control Department, the court found that the County demonstrated a legitimate, non-discriminatory basis for her removal due to her performance issues

and personal internet use throughout her probationary period. Finally, the court found that Stevens failed to satisfy her "heightened" burden of proving pretext. The court found that although Stevens' removal from her position at the Weed Control Department was close in time to her protected activity, she failed to adduce evidence that indicated Meyer was actually motivated by a desire to retaliate against her for attending the NEOC rebuttal conference. The court concluded that the County was entitled to judgment as a matter of law on Stevens' retaliation claim as it relates to the Weed Control Department.

Stevens appeals.

## III. ASSIGNMENTS OF ERROR

Stevens assigns, consolidated and restated, that the district court erred in granting the County's motion for summary judgment because it (1) used the wrong standard to test whether summary judgment was appropriate, (2) failed to find there was evidence of pretext, (3) found that she provided no evidence that Agena was aware of male employees who made frequent errors, and (4) found there was no evidence to support a claim of retaliation.

## IV. STANDARD OF REVIEW

An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine dispute as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018).

## V. ANALYSIS

### 1. SUMMARY JUDGMENT

Stevens assigns that the district court erred in using an incorrect standard to test whether summary judgment was appropriate. Specifically, she argues that the court at no point determined whether the evidence presented at the summary judgment hearing demonstrated a genuine dispute as to any material fact such that the County was entitled to judgment as a matter of law.

In relevant part, Neb. Rev. Stat. § 25-1332(1) (Cum. Supp. 2018) provides:

The judgment sought shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits.

A party moving for summary judgment has the burden to show that no genuine dispute of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. See *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018). After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing

party has the burden to present evidence showing a dispute of material fact that prevents judgment for the moving party. See *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017).

The district court specifically cited the above standards in its order. Contrary to Stevens' assertion, after explaining the County's evidence showing that it terminated Stevens for nondiscriminatory reasons, the court did, in fact, find that Stevens failed to present sufficient contradictory evidence to create a genuine dispute of fact.

Stevens also argues that the district court's reference to her "heightened burden" to show pretext demonstrates that it failed to apply the summary judgment standard, which places the burden of proof on the moving party. However, the district court did not use the term "heightened burden" when referring to the County's burden to show no genuine dispute of material fact. Instead, after finding the County had shown facts entitling it to a judgment as a matter of law, the court properly recognized the burden to present evidence showing a dispute of material fact had shifted to Stevens. The court provided that this burden of persuasion "'merge[d] with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination.'" In this context, the court described Stevens' "heightened burden" to show pretext. Both of these references to Stevens' burden of proof concerned the *McDonnell Douglas Corp.* framework, which we discuss further below, not the County's burden of persuasion to prevail on its motion for summary judgment or Stevens' burden to show a dispute of material fact. As a result, the court appropriately applied the summary judgment standard, and this assignment of error is without merit.

## 2. GENDER DISCRIMINATION CLAIM

The NFEPA, Neb. Rev. Stat. §§ 48-1101 to 48-1126 (Reissue 2010), furthers Nebraska's policy of fostering the employment of all employable persons in the state on the basis of merit and to safeguard their right to obtain and hold employment without discrimination. § 48-1101. Under the NFEPA, it is unlawful for an employer "[t]o fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" on the basis of that individual's sex. § 48-1104 (1) The NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. § 2000e et seq. (2012), and it is appropriate to look to federal court decisions construing similar and parent federal legislation. *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017).

An employee asserting a claim of discrimination under the NFEPA has two ways to show a genuine dispute of material fact for summary judgment purposes: (1) producing direct evidence of discrimination or (2) raising an inference of discrimination under the tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See *Marshall v. EyeCare Specialties*, 293 Neb. 91, 876 N.W.2d 372 (2016). In the context of a discrimination claim under the NFEPA, direct evidence consists of statements by a person with control over the employment decision sufficient to prove discrimination without inference or presumption. See *Marshall, supra*. To raise an inference of discrimination under the *McDonnell Douglas Corp.* tripartite burden-shifting framework, (1) the plaintiff has the burden of proving a prima facie case of discrimination; (2) if the plaintiff proves a prima facie case, the burden shifts

to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if the employer articulates a nondiscriminatory reason for its action, the employee maintains the burden to persuade the fact finder that the stated reason was pretextual. *Marshall, supra*.

### (a) Prima Facie Case for Gender Discrimination

A prima facie case of gender discrimination requires the plaintiff to prove that he or she (1) is a member of a protected class, (2) was qualified to perform the job, (3) suffered an adverse employment action, and (4) was treated differently from similarly situated persons of the opposite sex. *Chevalier v. Metropolitan Util. Dist.*, 24 Neb App. 874, 900 N.W.2d 565 (2017). The plaintiff bears the burden to first prove to the fact finder by a preponderance of the evidence a prima facie case of discrimination. *Id.* The district court found, and there is no dispute, that Stevens satisfied the first and third prongs of the prima facie case; she is a member of a protected class, and she suffered an adverse employment action. We thus turn to the questions of whether Stevens was qualified to perform her job at the Register of Deeds, and whether she was treated differently than similarly situated men.

### *(i) Qualified to Perform Job*

Stevens does not separately assign error to the district court's finding that she was not qualified to perform her job at the Register of Deeds. We nonetheless address this question as it relates to her assignment that the district court improperly entered summary judgment against her.

An employee's poor performance may preclude that employee from establishing that he or she was qualified for the position at the time of his or her discharge. See *Physicians Mut. Ins. Co. v. Scott*, 231 Neb. 947, 439 N.W.2d 72 (1989). See, also, *Holmes v. Archer Daniels Midland Co.*, 724 F.Supp.2d 1050 (D. Neb. 2010).

Even viewed in a light most favorable to Stevens, her frequent, well-documented errors demonstrate that she was not qualified to perform her job. Before starting as a technician I at the Register of Deeds' mapping division, she reviewed the position's duties, which primarily involved data entry. At her 6-month review, Chamberlin advised Stevens that accuracy was more important than speed and that she should slow down. And before she received any discipline for her data entry errors, Chamberlin gave Stevens two verbal warnings. After Stevens received a written reprimand regarding her data entry errors, Chamberlin provided her with a log to help her minimize her errors. Stevens' cubicle was moved to reduce her socialization, and her workspace was decluttered to minimize distractions.

Despite these efforts, Stevens continued to make data entry errors. On March 9, 2015, she was suspended for 1 working day for making five data entry errors. On May 14, Stevens was suspended for 2 working days for making three data entry errors. On June 9, she was suspended for 5 working days for making five data entry errors. Chamberlin again commented in her second annual performance review that she had issues with speed and accuracy. On July 15, Agena presented Stevens with a letter proposing to terminate her employment with the County for making six data entry errors. Stevens then transferred to the Weed Control Department, but returned to her position with the Register of Deeds on October 15. On November 9, Agena proposed to terminate

Steven's employment for making 19 data entry errors, and after a predisciplinary hearing, she was terminated on November 23.

Citing an unpublished opinion from this court and *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016), Stevens argues that Nebraska appellate courts have rejected employee qualification as an element of the prima facie case for gender discrimination. The cases Stevens cites are inapposite to
her situation. Neither case removed the element of qualification for the job from the prima facie case for gender discrimination. Instead, both cases involved failure-to-promote gender discrimination claims in which the plaintiffs alleged the defendant had intentionally disallowed them to demonstrate that they were qualified for a position. Here, Stevens had many opportunities to demonstrate her qualifications for her job. Time and again, her errors showed she was unable to perform that job with sufficient accuracy.

We agree with the district court that Stevens' frequent errors and poor performance in the mapping division of the Register of Deeds demonstrates that she was not qualified to perform her job at the time of her suspensions and termination. Thus, Stevens failed to satisfy this element of her prima facie case for gender discrimination.

### (ii) Disparate Treatment

Stevens does not specifically assign error to the district court's finding that she failed to satisfy her burden of proving that she was treated differently from similarly situated persons of the opposite sex, the fourth element of a prima face case of gender discrimination. However, she does generally assign error to the grant of summary judgment and specifically assigns error to the district court's finding that Agena was aware of male employees who made frequent errors, which finding was made in connection with the disparate treatment prong of the prima facie case. Thus, we will consider her arguments that she was subjected to different "terms and conditions of her employment than men" under this prong. Appellant's brief at 39.

The test to determine whether employees are similarly situated to warrant a comparison to a plaintiff is a rigorous one. *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005). Specifically, the individuals used for comparison must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Id.* See, also, *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017) (plaintiff failed to establish that higher-paid male employee was similarly situated as he had more responsibilities than plaintiff). For discriminatory discipline claims, employees are considered similarly situated when they are involved in or accused of the same offense and are disciplined in different ways. *Helvering, supra*. The plaintiff has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to her by a preponderance of the evidence. *Id.*

Stevens presented evidence that Ladegard, a male coworker in the mapping division, had made errors but was not disciplined by the County. The record, however, does not establish that Ladegard was a similarly situated employee. Although Ladegard had the same supervisors as Stevens, the record shows that he had a different job classification than Stevens. Although Stevens presented several documents containing Ladegard's errors that "mimicked" the errors for which

she was being punished, she did not present evidence of when these errors occurred or with what frequency. Chamberlain explained at the hearing on Stevens' appeal of her 1-day suspension that besides Stevens, no one in the mapping division, male or female, had made 30 errors over the course of 8 months. Thus, Stevens failed to show that Ladegard was accused of the same offense but was disciplined in a different way. *Helvering, supra.*

Stevens also points to Stidhem as a similarly situated male employee who was treated differently than she was. Stidhem was a former Register of Deeds employee who made errors without discipline. The daily reports he received on those errors showed he committed them very frequently. Stidhem, however, did not work in Stevens' division, was subjected to different standards than Stevens was, had different supervisors than Stevens did, and was terminated before the County hired Stevens--admittedly for reasons unrelated to his frequent errors. Under the rigorous test described above, Stidhem was not an employee similarly situated to Stevens. Therefore, evidence of his errors does not prove that the County treated men differently than women in the mapping division of the Register of Deeds.

Stevens argues that no male employee was disciplined for making more than three errors within a 15-day period. However, the record contains no evidence that any male employee actually made more than three errors in a 15-day period. Stevens' mere assertions are not sufficient proof that such similarly situated males exist. See *Fatemi v. White*, 775 F.3d 1022, 1040 (8th Cir. 2015) ("[t]o establish a genuine issue of material fact [the plaintiff] 'may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his or her] favor'"). To the extent Stevens argues the County's standard for errors was unfair, we note that employment discrimination laws have not vested in the courts the authority "'to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'" *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995)).

Stevens challenges the district court's finding that the record contained no evidence that Agena was aware of other employees who were making data entry errors at the same frequency as Stevens. She argues that the evidence she presented of Stidhem's and Ladegard's errors as well as Agena's and Chamberlin's admissions that people make mistakes all the time demonstrates that Agena did in fact know of employees making frequent errors like she was.

Stidhem worked at the Register of Deeds several years before Stevens, in a different division than Stevens, and in a different role than Stevens. Thus, evidence of his errors does not show that Agena knew of a similarly situated employee who made errors similar to Stevens' frequent errors. As to Ladegard, although the record shows he made errors that were similarly serious as Stevens' errors, there is no evidence that he made those errors as frequently as Stevens made her errors. Last, Agena's and Chamberlin's comments that recognized that everyone makes mistakes hardly constitute an admission that similarly situated employees were making serious data entry errors as frequently as Stevens did. Thus, we agree with the district court that the record contains no evidence that other similarly situated employees were making errors with the same frequency as Stevens.

We conclude that because Stevens did not present evidence of a similarly situated male who was disciplined differently than she was, she failed to present evidence that could prove the disparate treatment element of her prima facie case for gender discrimination.

Viewing the evidence in the light most favorable to Stevens, we find no genuine dispute of material fact with regard to Stevens' unsupported claim of gender discrimination and the County was entitled to judgment as a matter of law.

(b) Pretext

The district court went on to find that the County provided a legitimate, nondiscriminatory basis for disciplining Stevens and terminating her employment, namely her frequent errors. Stevens does not specifically challenge this finding and given our determination that the court correctly found she failed to prove a prima facie case of discrimination, we need not discuss it further. The court thereafter found that Stevens failed to show that the proferred reasons for her discipline were pretextual; the third part of the tripartite test under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See, *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810 (8th Cir. 2017); *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005). Again, because Stevens failed to establish a prima facie case for gender discrimination, we are not required to reach her assignment regarding pretext. However, for the sake of completeness, we do so. As discussed below, Stevens failed to demonstrate that the County's stated reason for suspending and terminating her was a pretext for gender discrimination.

The employee may demonstrate pretext either by showing that the employer's explanation is unworthy of credence, because it has no basis in fact, or by persuading the court that a prohibited reason more likely motivated the employer. *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016). The specific evidence presented to demonstrate discriminatory animus may vary, and its sufficiency will be considered as a whole. *Id.* The plaintiff may, for instance, demonstrate pretext by showing that the employer's proffered reasons had no basis in fact, the employer's proffered reasons were against the employer's policy or practice or involved other procedural irregularities, the employer's proffered reasons have changed substantially over time or are inconsistent, there was a sharp decline in the plaintiff's performance evaluations near the time of the employer's contested action, the decisionmaker made statements expressing a discriminatory attitude, statistical analysis demonstrating a pattern and practice of discrimination, comparative evidence that similarly situated persons in a nonprotected class were treated more favorably, or prior instances of disparate treatment of the plaintiff by the defendant in other contexts. See *id.*

Stevens argues that there are many reasons to disbelieve the County's stated reasons for termination. She asserts that she was treated differently than her male coworkers and that Agena admitted other employees commit errors and are not disciplined. These assertions are simply a restatement of her argument above regarding disparate treatment. As we stated there, the record is clear that Stevens made frequent, numerous data entry errors and the record failed to show that other similarly situated Register of Deeds' employees made similar errors of the frequency that she did.

Viewing the evidence in the light most favorable to Stevens, we find no genuine dispute of material fact with regard to her claim of pretext. Again, the County was entitled to judgment as a matter of law on her gender discrimination claim.

### 3. RETALIATION CLAIMS

Stevens assigns that the district court erred in finding there was no evidence to support a claim of retaliation. Stevens alleged retaliation claims against the County both for its actions against her in her position with the Register of Deeds and in her position with the Weed Control Department. As discussed below, the district court correctly found the County was entitled to judgment on Stevens' claims as a matter of law.

The NFEPA makes it unlawful for an employer to discriminate against its employee on the basis of the employee's opposition to an unlawful practice. See, Neb. Rev. Stat. § 48-1114 (Reissue 2010); *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005). Section 48-1114 provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because he or she (1) has opposed any practice made an unlawful employment practice by [NFEPA], (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [NFEPA], or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of [Nebraska].

The framework for a claim of retaliation under the NFEPA is the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), used for other unlawful employment practice claims under the NFEPA. *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017); *Helvering, supra*. To establish a prima facie case of unlawful retaliation, an employee must show (1) that he or she participated in a protected activity, (2) that the employer took an adverse employment action against him or her, and (3) that a causal connection existed between the protected activity and the adverse employment action. *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014). An employee is not required to prove the merits of the underlying discrimination charge that forms the basis for the alleged retaliatory treatment so long as the employee possessed a good faith belief that the offensive conduct violated the law. See *Helvering, supra*.

As the district court noted, the County conceded that Stevens met her burden to prove that she engaged in protected activity and that it took adverse employment actions against her. Therefore, we only address whether she showed a causal connection between the protected activity and the County's adverse employment action as to both of Stevens' positions. As discussed below, we find none.

### (a) Register of Deeds

Stevens first claims that the County retaliated against her in her position with the Register of Deeds. She argues that she was subjected to intensified scrutiny due to her gender discrimination claims, which eventually lead to her discharge. We find that the County adduced evidence to show

that no causal connection existed between Stevens' protected activity and the termination of her employment and Stevens failed to rebut this evidence.

The record shows the County disciplined Stevens for her unsatisfactory performance, and that discipline was not in retaliation for her gender discrimination claim. Stevens first alleged the County discriminated against her at the appeal hearing of her 1-day suspension to the Lancaster County Personnel and Policy Board. Assuming without deciding that Stevens' initial allegation of gender discrimination at the suspension hearing was protected activity under the NFEPA, the earliest time at which the County could have retaliated against her was after she made that accusation. As we described above, by the time of her appeal of her 1-day suspension, Stevens had a long history of receiving reprimands and discipline for her unsatisfactory performance, which supports the conclusion that Stevens' unsatisfactory performance--and not her gender discrimination allegation--motivated the discipline she received after the appeal.

Moreover, the records shows that Stevens' unsatisfactory performance continued after her appeal, and so it demonstrates that her performance, not her discrimination and retaliation allegations, caused the County to discipline her. About 10 days after Stevens appealed her first suspension, Agena sent her a letter noting five data entry errors, which were also similar to her other errors, and proposing to suspend her for them. Chamberlin presented Stevens with her annual performance evaluation after her suspension. In that performance review he commented that speed and accuracy were still major issues with her efforts to process deeds. About a week after Stevens received her performance review, Agena sent Stevens a letter proposing to terminate her employment for making six data entry errors, which were similar to the other errors she had made. Stevens then voluntarily left the Register of Deeds for a few months. Shortly after her return in October 2015, Agena presented a letter proposing to terminate her employment with the County, which explained 19 data entry errors she had made. Stevens was subsequently terminated for those errors.

The evidence shows that Stevens' discipline in her employment with the Register of Deeds was not causally connected to gender discrimination claims. As a result, we find the district court correctly concluded that she failed to make a prima facie case for retaliation as to that employment.

(b) Weed Control Department

Stevens also claims the County unlawfully retaliated against her in her position at the Weed Control Department for her gender discrimination claim. Stevens asserts that her employment with the Weed Control Department was successful until she disclosed her gender discrimination suit to Meyer. She claims that Meyer only began recording her mistakes after she disclosed her gender discrimination suit and that he never mentioned those mistakes to her. Stevens argues that Meyer's comments at the termination meeting coupled with the fact that she was terminated directly after a hearing on her gender discrimination claim show that her termination was in retaliation for those claims.

Sometimes, the timing of one incident of adverse employment action following protected activity suffices to establish causal connection. *Helvering, supra*. The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case of retaliation uniformly hold that the temporal proximity must be very close. *Id.*

The record shows Meyer began documenting Stevens' performance issues after his meeting with McDaniel on September 18, 2015. Although Stevens' "Declaration" claims that she advised Meyer on September 2 of an upcoming appeal hearing regarding her disciplinary proceeding, this document is not notarized and is not competent evidence to establish that Meyer knew before September 18 that Stevens had an employment discrimination claim against the Register of Deeds. Affidavits are allowed as evidence in a summary judgment proceeding. See Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2018). An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. *Penry v. Neth*, 20 Neb. App. 276, 823 N.W.2d 243 (2012). An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. *Id*. See, also, Neb. Rev. Stat. § 25-1241 (Reissue 2016). Here, Stevens' declaration did not comply with the requirements of an affidavit and is not admissible evidence for purposes of summary judgment. See *State ex rel. Wagner v. Gilbane Bldg. Co.*, 276 Neb. 686, 698, 757 N.W.2d 194, 204 (2008) ("[u]nsworn summaries of facts or arguments and of statements which would be inadmissible in evidence are of no effect in a motion for summary judgment"). Accordingly, we do not consider Stevens' declaration on the question of whether Meyer was aware of her disciplinary or discrimination claim prior his meeting with McDaniel on September 18 after which Meyer began documenting performance issues. There is no other evidence in the record to support this prior knowledge on the part of Meyer. On October 1, Meyer sent an email to McDaniel with details about the documented performance issues and recommended that Stevens' employment be terminated. Also on October 1, after the Meyer email to McDaniel, Stevens submitted an electronic leave request, requesting leave the morning of October 5 for a personalmeeting. This request made no mention of a hearing regarding Stevens' disciplinary proceeding or discrimination claim. There is no evidence in the record of any other conversation between Stevens and Meyers regarding her leave request for October 5. Although Stevens alleged in her second charge of discrimination and in her complaint that she informed Meyer that she had to take off work on October 5 to attend a rebuttal conference, there is no evidence in the record to support this allegation. Upon Stevens' return to the office in the afternoon of October 5, Meyer and McDaniel met with Stevens to advise her of the termination decision. This discussion focused on Stevens' performance issues and personal internet use.

Thus, while there is clearly temporal proximity between the timing of Stevens' termination in relation to the hearing on her gender discrimination claim, such temporal proximity does not by itself demonstrate retaliation. Contrary to Stevens' assertion, Meyer's comments during the termination meeting show that even though he was aware of her situation at the Register of Deeds, he was willing to give Stevens the "benefit of the doubt."

Stevens was hired at the Weed Control Department after she had already accused the County of gender discrimination. During her probationary term of employment at the Weed Control Department, Meyer documented issues with her performance and her personal internet use. He and McDaniel specifically mentioned those issues to Stevens during the meeting in which

they terminated her. Stevens provides no evidence showing that Meyer was only concerned with her performance issues because of her prior discrimination claim. Therefore, we conclude the district court correctly determined that Stevens failed to rebut the County's evidence that her termination from the County's Weed Control Department was not causally connected to her gender discrimination claim.

## VI. CONCLUSION

We conclude the district court correctly applied the summary judgment standard. The County presented sufficient evidence to show that it was entitled to judgment as a matter of law as to Stevens' gender discrimination and retaliation claims. The burden shifted to Stevens, who failed to present evidence showing a genuine dispute of material fact that would prevent judgment for the County. The record contained no evidence of similarly situated male County employees who made errors with the same frequency as Stevens, no evidence that the County's discipline and termination of Stevens was a pretext for gender discrimination, and no evidence to rebut the County's evidence that her termination was not causally connected to her protected activity. As a result, the district court properly granted the County's motion for summary judgment.

AFFIRMED.